[Civ. No. 23586.   Second Dist., Div. Three.   Oct. 21, 1959.]

MRS. JESSE JAMES, JR., Appellant, v. SCREEN GEMS, INC. (a Corporation) et al., Respondents.

Cox & Ross and Bernard S. Grossman for Appellant.

Spray, Gould & Bowers, Mitchell, Silberberg & Knupp and Guy Knupp for Respondents.

WOOD (Parker), J.—Plaintiff appeals from a judgment of dismissal based upon an order sustaining a demurrer to an amended complaint and upon the failure of plaintiff to amend within the time allowed for amending.

There are two purported causes of action in the amended complaint. The allegations of the first cause of action are, in substance, as follows: Defendant Screen Gems produced a film entitled ''Bitter Heritage'' which allegedly portrays a segment of the life of Jesse James, Jr., son of Jesse James, the notorious outlaw and guerrilla fighter who lived from 1847 to 1882. Plaintiff was the wife of Jesse James, Jr. She lived with him as his wife for more than 50 years and is his widow. Defendant Columbia Broadcasting System advertised the film indicating to the public that the film would be exhibited on said defendant's ''Playhouse 90'' production for nationwide television viewing on April 17, 1958, and said defendant caused certain previews of said film to be shown on its ''Playhouse 90'' production on April 10, 1958. Plaintiff viewed the previews on April 10, 1958, and on April 11 viewed the entire film. All people, places, and events portrayed in said film are pure fiction with the exception that Jesse James, Jr., and Frank James, brother of Jesse James, were real persons, and that Jesse and Frank James had a mother living during the time of the alleged incidents of the film, and that the town of Jearney (Kearney) is a real town located in Missouri. Defendant Screen Gems produced the aforesaid film consisting of false statements and incidents concerning the life of plaintiff's deceased husband, to wit: that Jesse James, Jr., was portrayed ''as being (1) a sideshow attraction in a carnival while he was a child (2) an outcast from his hometown of Kearney, Missouri, for a period of 15 years (3) one who was implicated in a bank robbery (4) one who was portrayed as taking the law into his own hands by carrying and bearing firearms for the purpose of defending his honor, which was contrary to the laws of the State of Missouri during the period of time portrayed in said film.'' The portrayal of said false statements and incidents about plaintiff's deceased husband was made with the intent that the public, by nationwide television, would be misled into false belief as to the activities and character of plaintiff's deceased husband, and was made for the exploitation of plaintiff's deceased husband's personality and name for commercial purposes. On April 17, 1958, in disregard of plaintiff's wishes

and requests, defendant Columbia Broadcasting System caused the film to be broadcast on nationwide television. By reason of the broadcast of the film, plaintiff's friends and members of the general public mistakenly assumed that certain false statements concerning plaintiff's deceased husband (the statements referred to above) were true. As a result, these friends and members of the general public contacted plaintiff, "asserting the truth" of statements referred to above and thereby expressing that her deceased husband was the type of person as portrayed in said film, causing plaintiff's friends and members of the general public to ridicule, scorn, and harass her and causing some of her friends to abandon her. Many of plaintiff's friends and members of the public derived the opinion that plaintiff was portrayed in the said film as the daughter of a contemptible person. Thereby plaintiff was caused grievous mental and physical suffering and she was damaged in the amount of $1,000,000. Further allegations are, in substance, as follows: Plaintiff is informed and believes that defendant Screen Gems retained the film and the right to rebroadcast the same, and that a second broadcast by defendant Columbia Broadcasting System is to be performed and that other exploitation of the film is to be made after the second broadcast of the film. Therefore plaintiff alleges that said rebroadcast will result in further irreparable injury to her. The broadcasting of the film by defendants, and other possible future broadcasts, are and will be in violation of plaintiff's right to happiness as guaranteed by article I, section 1, of the state Constitution and a violation of the First and Fourteenth Amendments to the federal Constitution.

The allegations of the second cause of action are, in substance, as follows: Plaintiff repleads the allegations of the first cause of action. Plaintiff has used the name Mrs. Jesse James, Jr., for 58 years. Plaintiff's friends and the general public have associated plaintiff with Jesse James, Jr., through the use of the common name. The names Mrs. Jesse James, Jr., and Jesse James, Jr., belong solely to plaintiff and her deceased husband jointly "by reason of the living of the marriage vows for a period of 51 years; and as such plaintiff maintains a certain interest of monetary value by her designation and title of Mrs. Jesse James, Jr." Defendants knew of plaintiff's existence and had ample opportunity to consult with her in regard to the use of the name Jesse James, Jr., for commercial purposes. At no time did defendants consult with plaintiff in regard to her interest in the name Jesse

James, Jr. Defendants, by use of the name Jesse James, Jr., exploited for pecuniary gain plaintiff's interest in the joint family name without any compensation to her. Plaintiff was damaged thereby in the amount of $500,000.

The prayer was that defendants be enjoined from rebroadcasting or further exploiting the film or story "Bitter Heritage" or any film or show pertaining to Jesse James, Jr., and from broadcasting any story, film or show in which the name Jesse James, Jr., of Mrs. Jesse James, Jr., is used; and that plaintiff be awarded damages of $1,000,000 on the first cause of action and $500,000 on the second cause of action.

Appellant contends that the amended complaint states facts sufficient to constitute a cause of action for wrongful invasion of the right of privacy. She argues, in effect, that the allegations of the amended complaint present an issue of fact as to whether her right of privacy was invaded by the false portrayal of alleged events in her husband's life in that the amended complaint includes allegations that such portrayal caused her, as the wife of Jesse James, Jr., for over 50 years and as his widow, to be harassed, scorned and ridiculed.

■ "The authorities appear to be uniform that the right of privacy cannot be asserted by anyone other than him whose privacy is invaded." (*Kelly* v. *Johnson Publishing Co.*, 160 Cal.App.2d 718, 722 [325 P.2d 659].) ■ In *Coverstone* v. *Davies*, 38 Cal.2d 315 [239 P.2d 876], it was said, at pages 322 and 323: "The gravamen of the tort [invasion of the right of privacy] is ordinarily the unwarranted publication by defendant of intimate details of plaintiff's private life."

■ It was also said therein, at pages 323 and 324: "So far as the briefs and independent research have revealed, there have been no instances wherein courts have allowed recovery on this theory, where defendant's alleged wrongful act was directed toward a third person, and only as an incident to that act was it claimed that plaintiff's privacy had been invaded. Neither reason nor authority indicates that there should be an extension of liability to cover such a situation. Such a rule would open the courts to persons whose only relation to the asserted wrong is that they are related to the victim of the wrongdoer and were therefore brought unwillingly into the limelight. Every defamation, false imprisonment, and malicious prosecution would then be an actionable invasion of the privacy of the relatives of the victim."

■ In the present case, the alleged wrongful portrayal

of Jesse James, Jr., was directed toward him and not toward plaintiff. It is to be noted that there is no allegation in the amended complaint that plaintiff was portrayed in the film. There was an allegation that many of plaintiff's friends and members of the public derived the opinion that plaintiff was portrayed in the film as the daughter of a contemptible person. That allegation, regarding the opinion of other persons, is not an allegation that plaintiff was portrayed.

The complaint does not state facts sufficient to constitute a cause of action for wrongful invasion of plaintiff's right of privacy. The demurrer was properly sustained.

The judgment is affirmed.

Shinn, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1959.