Richard J. Cardamons, J.
This is a motion by the petitioners, Rome Sentinel Company and the Utica Observer Dispatch Corporation, pursuant to article 78 of the C'PLR for an order directing the respondents to issue to the petitioners a certified copy of the record of death of one G-eorge L. Heim.
In December, 1963, G-eorge L. Heim died in a motel in the City of Rome, New York. At the time of death, his next of kin were unknown. His death and the fact that his relatives were unknown were reported in petitioners’ newspapers. An Oneida County Coroner investigated the cause of death and filed a death certificate in the office of the respondent, Emily Boustedt, Registrar of Vital Statistics of the City of Rome. An oral and written request made on respondents on January 7, 1964, for a certified copy of the death certificate was denied on January 9, 1964, by' the Registrar of Vital Statistics. On *599 appeal to the Commissioner of Public Safety of the City of Rome, the action of the Registrar of Vital Statistics was affirmed. On January 16 respondent, Hollis Ingraham, Commissioner of Health of the State of New York, also denied petitioners’ request of January 7, 1964, stating: “ I am not privileged under the Statute of the State of New York to issue a certified copy of a death record unless the copy is required for judicial or other proper purposes. Your letter indicates that the record is required for newspaper publicity only and we do not consider this to be either a judicial or a proper purpose ’ ’. It is the petitioners’ contention that they are entitled to the death certificate since the circumstances of death were newsworthy and they allege that the concealment of the facts concerning the cause of death gave rise in the community to false rumors as to the circumstances of death. The respondents state that their refusal to issue the death certificate was not arbitrary or capricious but within their discretionary power, and that their determination that the request by the petitioners was not for a proper purpose should not be disturbed by the courts.
Section 4174 of the Public Health Law provides:
“ 1. The commissioner or any person authorized by him shall:
£< (a) upon request, issue to any applicant a certified copy of the record of any death registered under the provisions of this chapter, unless he is satisfied that the same does not appear to be necessary or required for judicial or other proper purposes ”.
The respondents do not claim to stand in decedent’s shoes and assert on his behalf an invasion of his right to privacy. In this State, that right is governed by statute. (Civil Rights Law, § 51; Gautier v. Pro-Football, 304 N. Y. 354, 358.) Further, the right is limited to the living, the cause of action, may not be asserted by others after decedent’s death. (Schumann v. Loew’s, 135 N. Y. S. 2d 361.) Against petitioners’ claim of the public’s right to know, respondents do interpose the discretionary language of the statute (Public Health Law, § 4174, subd. 1).
The resolution of the question as to whether issuing the death certificate to the petitioning newspapers is a “ proper purpose ” under the statute must depend here, as in each case, upon its own peculiar circumstances. In balancing the community’s right to be informed by the news media with the discretionary power of public officials to refuse to release public records, certain criteria may be formulated. It appears to *600 this court that the public’s right'to know should be subject to only those matters which have a news value or are of public interest of a legitimate kind. The news media must provide news but avoid poking or prying into matters which an individual might reasonably insist on keeping to himself. The public’s right to know and be informed on the activities of public figures is practically absolute unless commercialization may be shown. (Hill v. Hayes, 18 A D 2d 485; Gautier v. Pro-Football, supra.) Even the ordinary citizen may be newsworthy under certain circumstances. Whether the event be a calamity or an honor, it may be one in which his neighbors have a legitimate interest. During this brief period and for a reasonable length of time thereafter, pictures, stories and comments may be made without his consent. (Warren and Brandéis, Bight to Privacy, 4 Harv. L. Bev. 193; Pound, Interests of Personality, 28 Harv. L. Bev. 343; Bestatement, Torts, § 867; Prosser, Torts [2d ed.], § 97; Neill, Protection of Privacy, 25 Modern L. Bev. 393.) Placing the circumstances here within that framework, a sudden death in a place of public accommodation is a matter which clearly falls within that legitimate area of the public’s right to know.
An analysis of the historical development of section 4174 sheds light on the legislative intent in regard to the discretionary power of the Commissioner. Born in 1847'(L. 1847, ch. 152), amendments and additions followed throughout succeeding years, particularly in 1893 (L. 1893, ch. 661) and 1909 (first called “ Public Health Law”, L. 1909, ch. 49). In 1913 a new article was added to the Public Health Law (L. 1913, ch. 619, § 391) which provided that “the state commissioner of health may, upon request, supply to any applicant a certified copy of the record of any birth or death registered under the provisions of this act ” (italics supplied). The discretionary word 1 ‘ may ’ ’ was carried forward in subsequent amendments (L. 1921, ch. 398; L. 1925, ch. 367, § 8) until the year 1932. In that year the word ‘ ‘ may ’ ’ was eliminated and the word “ shall” substituted (L. 1932, ch. 113) together with the qualifying language now in section 4174. The reason for the change was due to the fact that the permissive words had been interpreted by the courts to be mandatory, i.e., “ ‘may’ was construed to mean ‘ must ’ where the request for such a certificate was made by a person lawfully entitled to. such a certification ”. (26 N. Y. St. Dept. Rep., 514, 543 [opinion of the Attorney-General], citing People ex rel. Reynolds v. Common Council of City of Buffalo, 140 N. Y. 300.) The opinion of the Attorney-General continues at page 543: ‘ ‘ Section 66 of the Public *601 Officers Law * * * would also serve by the operation of its provisions to render the power and authority conferred upon the State Commissioner of Health by section 391 of the Public Health Law a mandatory duty and not simply permissive or discretionary ’ \
Section 66 of the Public Officers Law still expresses a strong legislative policy to make available to the public inspection of records or other papers kept in the public offices, subject only to those exceptional circumstances where secrecy is enjoined by statute or rule or other overriding consideration. The section provides that: “A person, having the custody of the records or other papers in a public office, within' the state, must, upon request, and upon payment of, or offer to pay, the fees allowed by law * * # diligently search the files, papers, records and dockets in his office; and * * * make one or more transcripts therefrom, and certify to the correctness thereof ”. This policy, in favor of full publicity, demands the broadest possible interpretation of the scope and content of section 66. (Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 686.) The records kept pursuant to the provisions of section 4174 of the Public "Health Law have been defined as those public records which are available to all persons, including a newspaper, for inspection. (Matter of Van Allen v. McCleary, 27 Misc 2d 81, 84; see Matter of New York Post Corp. v. Moses, 10 N Y 2d 199, 208, dissenting opinion, Ftjld, J.)
Death certificates have long been available as public records for purposes of private controversy. (Davis v. Supreme Lodge, Knights of Honor, 165 N. Y. 159; Buffalo Loan, Trust & Safe Deposit Co. v. Knights Templar & Masonic Mut. Aid Assn., 126 N. Y. 450; Neville v. Board of Health of City of N. Y., 21 N. Y. S. 574.) Other public records have been permitted to be inspected. Thus, a taxpayer has a right to look at the tax records. (Matter of Lord, 167 N. Y. 398.) Even under broad publicity statutes, however, the individual seeking .to inspect public books and records must show some legitimate and specific purpose and not merely the gratification of idle curiosity. (Matter of Allen, 148 App. Div. 26, 29, affd. 205 N. Y. 158.) .Clearly, that improper purpose was not the fact here. It cannot be held that routine publication of the cause of death as a matter of public interest in a newspaper is, as a matter of law, an improper purpose. (1944 Atty. Gen. 239, 241 — construing Public Health Law, § 391, now § 4174.)
Accordingly, the respondents are directed to issue to the petitioners the death certificate of George L. Heim, upon the payment by the petitioners of the proper statutory fees.