Rose Carlson, Individually and as Administrator of the Estate of Sarah Finley, Deceased, and Rita Pletsch, et al., Plaintiffs-Appellants, v. Dell Publishing Company, Inc., a Corporation, Defendant-Appellee.

Gen. No. 50,400.

First District, First Division.

December 13, 1965.

John H. Galgano and Patrick A. Barton, of Chicago, for appellants.

Tenney, Bentley, Guthrie & Howell, of Chicago (Stephen J. Nagy, of counsel) for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a right of privacy action brought by the administrator of the estate of Sarah Finley, deceased, and nine children of the decedent, against the defendant owner and publisher of a magazine known as "Front Page Detective." Plaintiffs appeal from an order which allowed defendant's motion to strike the amended complaint and dismiss the action.

The two count amended complaint shows that Sarah Finley died on March 20, 1956. In the July 1956 issue of the magazine, defendant published a story of Sarah Finley's rape and murder, entitled "This Brick With My Regards." The photographic copy of the story incorporated in the amended complaint starts with a two page picture of the murder suspect autographing a common house brick. In bold letters across the picture appeared

the words, "I Cracked Her On The Head A Few Times Then Lighted A Match To See How Bad She Was Hurt. WOW! She Must Have Had A Very Thin Skull."

The article proceeded in narrative form to describe the condition of "the body of the lady in the gay red slippers . . . found sprawled in the desolate wind-swept alley at dawn." Portrayed were the thoughts passing through the mind of the police sergeant summoned from headquarters, and it set forth the presumed dialogue between the policemen concerning the similarity between the present and several earlier slayings.

The article contained a picture of a detective at the side of the body beside a picture of the decedent taken during her lifetime. The story related the finding on decedent's body of a nickel and two pennies in coin and the name and serial number of a soldier at Fort Leonard Wood, Missouri. It told how the police called the soldier and described the reaction and words of the 23-year-old son of the victim when the dead woman was described to him. It stated his mother was Mrs. Sarah Finley, 62-year-old widow and mother of twelve grown children, who lived with an older son on South Union Avenue, a short walk from the death scene. The police conversation with the older son at South Union Avenue was related, wherein he gave the name of a sister, Rita, together with the personal habits of the decedent.

In Count I, it is alleged that the article "maliciously defamed and tended to blacken the memory of Sarah Finley, then deceased, . . . ," and caused great mental suffering to plaintiffs. Count II alleges that the article "was published and circulated without the consent of the plaintiffs and against their desires, and constituted an invasion of the privacy of plaintiffs and resulted in great mental suffering to plaintiffs."

In substance, plaintiffs contend "private individuals have a cause of action for being brought back into the limelight by magazine publication of a tragedy no longer

211

newsworthy," and the occurrence, more than three months previous to the publication, was no longer news. "The publication was a story designed to appeal to the idle and prurient," and "brought the plaintiffs out of the solitude which it was their right to enjoy. This invasion of their right to privacy is the basis of the suit. They had a right to let time heal their wound and not to have the wound reopened solely for the defendant's selfish motives." Cases cited to support plaintiffs' claim that they have a cause of action for invasion of privacy include Eick v. Perk Dog Food Co., 347 Ill App 293, 106 NE2d 742 (1952) ; Annerino v. Dell Pub. Co., 17 Ill App2d 205, 149 NE2d 761 (1958) ; Smith v. Doss (Ala), 37 So2d 118 (1948) ; Wagner v. Fawcett Publications, 307 F2d 409 (CA 7th, 1962) ; and Hazlitt v. Fawcett Publications, 116 F Supp 538 (1953).

In Illinois, recognition of a cause of action for violation of the right to privacy was established initially in Eick v. Perk Dog Food Co., 347 Ill App 293, 106 NE2d 742, where it was held that the plaintiff had a clear right to be protected against the use of her photographic likeness in order to further a commercial enterprise. The fact that her damages were exclusively the result of her mental anguish did not defeat her right. On page 299, it was said:

> "Basically, recognition of the right to privacy means that the law will take cognizance of an injury, even though no right of property or contract may be involved and even though the damages resulting are exclusively those of mental anguish. A person may not make an unauthorized appropriation of the personality of another, especially of his name or likeness, without being liable to him for mental distress as well as the actual pecuniary damages which the appropriation causes. The right of privacy is, of course, limited in cases of express or implied consent and in areas of legitimate public interest."

In Annerino v. Dell Pub. Co., 17 Ill App2d 205, 149 NE2d 761, the widow of a detective, who had been killed by a gangster, sued to recover damages on account of the use of her photograph in a publication, which retold the story in an article entitled "If You Love Me, Slip Me A Gun." In holding the complaint stated a cause of action for an unwarranted invasion of plaintiff's right of privacy, the court said (p 210):

> "Plaintiff here has made the publication an essential allegation of her complaint. . . . There is no difficulty in ascertaining that what plaintiff complains of is not news reporting, but the use of her photograph in connection with a 'story' which makes a strong appeal to the idle and prurient. This is sufficient to raise a question of fact."

Defendant's theory is that the plaintiffs' rights of privacy were not invaded because the article neither identifies the plaintiffs nor substantially publicizes them; defendant was privileged to publish the article in question because it contained information of legitimate public interest and news; neither the literary style adopted by defendant nor the fact that defendant made money by selling its publication defeats that privilege. Defendant also asserts the amended complaint alleges no facts showing that the article is untrue; it contains no allegations that defendant's article is fictionalized; no plaintiff's full name appears in the article; it mentions neither the first name nor the last name of nine of the plaintiffs.

Initially, we find that the administrator here has no cause of action for libel or right of privacy of the decedent as related to a publication which occurred after her death. As the alleged defamation occurred after her death (Count I), it cannot be considered as an action which survived her or as part of her estate, capable of being pursued in some fashion for either her heirs or legatees. Furthermore, "slander and libel" are statutory

exceptions to the actions which survive the death of a deceased person. (Ill Rev Stats 1963, c 3, § 339.) Also, there can be no cause of action for right of privacy on behalf of decedent's estate (Count II). It is obvious that mental anguish of the decedent, an essential element here, cannot be proved for something that occurred after her death. There can be no cause of action for right of privacy on behalf of her estate. See Maritote v. Desilu Productions, Inc., 345 F2d 418, (CA, 1965), where it is said (p 420):

> "It is anomalous to speak of the privacy of a deceased person. The telecast did not mention any plaintiff here and hence the privacy of no plaintiff was invaded by defendants. . . . Comment, fictionalization and even distortion of a dead man's career do not invade the privacy of his offspring, relatives or friends, if they are not even mentioned therein."

Considered next is the right of privacy of the children of the decedent. Plaintiffs contend that the article was no longer news and therefore untimely. Cited is Wagner v. Fawcett Publications, 307 F2d 409, where it appears in an opinion given on rehearing that the court had previously held "the trier of facts could find that the articles published by defendants months after the death of Mary Lou Wagner had ceased to be news." However, on rehearing, the court took judicial notice of proceedings in the Criminal Court of Cook County, which facts "belatedly establish that when the articles in question were published by defendants their subject matter related to current news," and for that reason "the district court did not err in dismissing plaintiff's complaint. . . ." (p 411.)

In Rozhon v. Triangle Publications, Inc., 230 F2d 359 (CA 7th, 1956), the court said, in discussing an article published five months after a death:

214

"In our opinion Frank Rozhon had been catapulted into an area of legitimate public news interest. . . . Against the factual background, shown by the record before us, we hold that the timeliness of defendant's revival of the story did not present an issue which had to be submitted to the jury." (pp 361, 362.)

It should be noted that a magazine is not geared to concurrent publication of newsworthy events as is a newspaper. If it be conceded that magazines are privileged to feature newsworthy events, a four-month interval between the happening of a newsworthy event and its publication in a magazine does not appear to be significant in determining whether the event had lost its newsworthy value. We hold that the publication of the article here was timely. See, also, Bradley v. Cowles Magazines, Inc., 26 Ill App2d 331, 168 NE2d 64 (1960).

As to identification of plaintiffs, defendant argues that "in the case at bar, without independent knowledge of the plaintiffs and their family relationships, it is impossible to identify the plaintiffs. The article alone does not identify them. No plaintiffs' full name appears in the article. It mentions neither the first name nor the last name [of nine] of the plaintiffs. The tenth plaintiff and a woman identified in the article as the [decedent's] married daughter have the same first name—Rita. No picture of any plaintiff appears in the article. . . . Only information not contained in the article could link these plaintiffs with the murder of Sarah Finley." We agree.

In Jenkins v. Dell Pub. Co., 251 F2d 447 (CA 3rd, 1958) the court stated (p 450) :

". . . the interest of the public in the free dissemination of the truth and unimpeded access to news is so broad, so difficult to define and so dangerous to circumscribe that courts have been reluctant to make such factually accurate public disclosures

215

tortious, except where the lack of any meritorious public interest in the disclosure is very clear and its offensiveness to ordinary sensibilities is equally clear. . . ."

In Bradley v. Cowles Magazines, Inc., 26 Ill App2d 331, 168 NE2d 64, this court declined to extend the right of privacy to provide damages for the anguish of a mother, caused by a publication concerning the death of her son. In remarking that plaintiff was not featured nor substantially publicized, the court noted that the article referred to plaintiff, gave her address and stated that she was the mother of the murdered boy.

In the light of the foregoing pronouncements, we conclude the amended complaint does not state a right of privacy action on behalf of the decedent's children. The article is not shown to have been untimely nor does it show an appropriation of the personalities of the decedent's children, either by name or by likeness. Their personalities are not substantially featured nor does the article contain or purport to contain a photographic likeness of any one of them.

Finally, plaintiffs contend "the court erred in not allowing the suggestions of plaintiffs to dismiss the motion of defendant for delay." This contention is based upon the premise that under the rules of the trial court, it was the obligation of defendant to secure a ruling on its motion to dismiss within 90 days after it was filed. In view of our determination that the amended complaint does not state a cause of action, the instant contention is not material.

For the reasons given, the order appealed from is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.