Fay YOUNG et al., Plaintiffs,

v.

**THAT WAS THE WEEK THAT WAS**
et al., Defendants.

No. C 65–268.

United States District Court,
N. D. Ohio, E. D.

June 9, 1969.

Conrad J. Morgenstern, Cleveland, Ohio, Francis A. Sciangula, Rocky River, Ohio, for plaintiff.

Victor DeMarco and Patrick F. McCartan, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is a class action. Plaintiffs sue on their own behalf and on behalf of all others similarly situated. The defendants are certain organizations and individuals associated with the television

program "That Was The Week That Was."

The plaintiffs have named as a defendant the program itself. They have named the National Broadcasting Company and Westinghouse Broadcasting Company, both of which televised the program. They have named the Colgate-Palmolive Company, P. Lorrilard Company, and the Caryl Richards Cosmetics, Inc., all of which sponsored the show. They have also sued Leland Hayward Productions, Inc., which produced the show, and six individual defendants who either appeared on the show or were responsible for its contents.

The six individual defendants and Leland Hayward Productions, Inc., have previously been dismissed from this action. In addition, the television program itself has not been served with process. The remaining defendants have now moved the Court for summary judgment in their favor and against the plaintiffs.

The essential facts are not in dispute. Plaintiffs are the children, grandchildren, great-grandchildren, and great-great-grandchildren of one Katherine Young. Mrs. Young, who was a resident of Syracuse, New York, died at the age of 99 on April 6, 1965. At the time of her death, she was survived by 5 sons, 5 daughters, 67 grandchildren, 172 great-grandchildren, and 73 great-great-grandchildren.[1]

"That Was The Week That Was" (hereinafter referred to as TW-3) was a program televised weekly by the defendant, National Broadcasting Company (hereinafter referred to as NBC). The program was sponsored by the defendants, Colgate-Palmolive Company, P. Lorrilard Company, and the Caryl Richards Cosmetics, Inc. It was carried in Cleveland, Ohio over the facilities of KYW-TV, a television station owned and operated by defendant Westinghouse Broadcasting Company. The program was directed toward humorous and satirical comment on current events, issues, and personalities.

Plaintiffs allege that the television program involved here was televised throughout the United States. Defendants have not controverted this fact.

During the course of TW-3 telecast of April 20, 1965, the following statement was made concerning Mrs. Katherine Young: "Mrs. Katherine Young of Syracuse, New York, who died at 99 leaving 5 sons, 5 daughters, 67 grandchildren, 72 great-grandchildren, and 73 great-great-grandchildren, gets our First Annual Booby Prize in the Birth Control Sweepstakes."

The plaintiffs allege that this statement was made "wantonly, maliciously, negligently, and without regard to the rights of plaintiffs and without plaintiffs' knowledge and without plaintiffs' consent." The defendants have not admitted this allegation, but assume that it is true for purposes of their motion for summary judgment.

On the basis of the statement referring to Katherine Young, which occurred in the course of the defendants' television presentation, the plaintiffs have filed their complaint, which alleges two separate causes of action. Plaintiffs' first cause of action alleges that as a result of this statement, plaintiffs were caused to suffer "humiliation, chagrin, insult, injury [and] embarrassment." Plaintiffs allege that the statement "impugns the lineage, origins and good name and reputation of all members of the family and descendants of Katherine Young." Plaintiffs further allege: "It infers that their origins were the product of excessive sexual activity, abnormal and socially unacceptable behavior, and is an insult inflicted upon them which time cannot eradicate."

Plaintiffs' first cause of action alleges that the statement invaded the privacy of the plaintiffs. Plaintiffs' second

1. The figure of 172 great-grandchildren is based upon the newspaper reports of Mrs. Young's death attached to the defendants' affidavits. The defendants' telecast stated that she had 72 great-grandchildren. This factual question is not material to the issues in this case.

cause of action alleges that the defendants portrayed Katherine Young in a derogatory, insulting, and excessively personal manner so as to impugn the lineage, origin, good name, reputation, image, and community standing of the family and descendants of Katherine Young, and that this portrayal was for the defendants' own economic enrichment. The cause of action further alleges that the defendants, as a result of this portrayal, have been unjustly enriched without regard to the rights of the plaintiffs and without the plaintiffs' consent.

Plaintiffs seek damages for their first cause of action in the amount of five million dollars. They seek a similar amount of damages for their second cause of action and also pray for five million dollars punitive damages from the defendants.

■ It appears that the law to be applied in this case is that of Ohio. Most courts considering the choice of law in right of privacy cases have applied the law of the plaintiff's residence, since that is the jurisdiction in which the plaintiff sustained his injury. Bernstein v. NBC, 129 F.Supp. 817 (D.C. 1955), aff'd on district court's opinion, 98 U.S.App.D.C. 112, 232 F.2d 369 (1956), cert. den. 352 U.S. 945, 77 S.Ct. 267, 1 L.Ed.2d 239 (1956); Restatement of the Law 2d, Conflict of Laws, § 153. Although the law of the plaintiff's residence is applied, the cases permit the plaintiff to recover at that place the whole amount of damage for harm inflicted upon him as a result of publications in other jurisdictions. Bernstein v. NBC, *supra*; Restatement of Torts, § 652.

The choice of law in the instant case might involve a minor problem, since this is a class action and some of the plaintiffs may reside in other states. As one court has pointed out, however: "The authoritative material on the right of privacy is not developed so far that we are confronted * * * with a difference in law of the various states which would necessitate a choice, choosing one rule to be applied and rejecting another." Leverton v. Curtis Pub. Co., 192 F.2d 974, 976 (3d Cir. 1951) at page 976.

There are few significant differences in the law of the various states which recognize a right of privacy. The right of privacy is a relatively new form of action, and the right recognized in most states derives originally from a law review article published in 1890. In addition, most states apply the rule as enunciated in the Restatement of Torts, § 652. It appears, then, that although some of the plaintiffs within the class present here may reside in states other than Ohio, no significant conflict of laws problem is presented.

Ohio applies the general rule relating to right of privacy, which is best articulated in the Restatement of Torts, § 652. The leading Ohio case on the subject is Housh v. Peth, 165 Ohio St. 35, 133 N.E.2d 340 (1956). The court's syllabus in that case reads as follows:

"Syllabus 1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"Syllabus 2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

The plaintiffs assert that their right of privacy was invaded by the satiric reference to their relative, Katherine Young, in the course of the defendants' television program.

The defendants have raised a number of defenses, certain of which are before the Court in the defendants' motion for summary judgment.

The defendants assert that the complaint does not state a claim, since the right of privacy is a personal right and

there can be no recovery for the publication of information about another person.

The statement made on the defendants' television program mentioned only the name of Katherine Young. Plaintiffs were not themselves mentioned by name on the program or identified in any other way. Can the plaintiffs recover for the publication of this information about their deceased relative?

■ The right of privacy has always been treated by the courts as a personal right fashioned to protect an individual's solitude. The right is not violated, unless there is some unwarranted disclosure or exploitation of the private affairs or the personality *of the complaining party himself.* Starrels v. Commissioner, 304 F.2d 574 (9th Cir. 1962); Gruschus v. Curtis Pub. Co., 342 F.2d 775 (10th Cir. 1965); Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491 (1939); Kelly v. Johnson Pub. Co., 160 Cal.App.2d 718, 325 P.2d 659 (1958); Werner v. Times-Mirror Co., 193 Cal.App.2d 111, 14 Cal.Rptr. 208 (1961); Carlson v. Dell Pub. Co., 65 Ill. App.2d 209, 213 N.E.2d 39 (1965); Kelley v. Post Pub. Co., 327 Mass. 275, 98 N.E.2d 286 (1951); Brauer v. Globe Newspaper Co., 351 Mass. 53, 217 N.E. 2d 736 (1966 Mass.); Atkinson v. John E. Doherty & Co., 121 Mich. 372, 80 N. W. 285, 46 L.R.A. 219 (1899); Schuyler v. Curtis, 147 N.Y. 434, 42 N.E. 22, 31 L. R.A. 286 (1895); Schumann v. Loews, Inc., 144 N.Y.S.2d 27 (S.Ct.N.Y.1955); Rome Sentinel Co. v. Boustedt, 43 Misc. 2d 598, 252 N.Y.S.2d 10 (1964); Runyon v. United States, 281 F.2d 590 (5th Cir. 1960); Milner v. Red River Valley Pub. Co., 249 S.W.2d 227 (Tex.Civil Appeals 1952).

Virtually all the cases which have passed upon this question (cited above) have held that an individual has no cause of action for invasion of *his* privacy, where the defendant published information concerning the individual's deceased relative. Gruschus v. Curtis Pub. Co., *supra,* for example, involved a complaint by the daughter of a deceased contractor. The defendant had published an article allegedly giving the false impression that plaintiff's deceased father was guilty of bribing public officials. The Court held that an action for invasion of privacy does not survive the death of the party whose privacy was invaded, and no one else can assert the right, unless the complaining party's privacy *also* was invaded.

A similar case was James v. Screen Gems, Inc., 174 Cal.App.2d 650, 344 P.2d 799 (1959). Plaintiff there was the widow of the son of Jesse James, the notorious outlaw. Her deceased husband was publicized in a film produced by the defendants. The plaintiff herself was not portrayed in the film, but she alleged that she was harrassed, scorned and ridiculed as a result of the allegedly false statements and incidents in the film. The Court held that these acts of the defendants did not create a cause of action on behalf of the plaintiff, since the defendants' allegedly wrongful acts were directed toward a third person, her deceased husband.

Maritote v. Desilu Productions, Inc., 345 F.2d 418, 18 A.L.R.2d 863 (7th Cir. 1965), cert. den. 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 124, was a similar case. This action was brought by the administratrix of the estate of Al Capone, and also by his widow and son. The defendants had produced the broadcast a television series known as "The Untouchables," which included fictionalized versions of events in the life of Al Capone, the notorious mobster. The Court held that the complaint did not state a claim, since the right of privacy is purely personal and cannot be asserted by anyone other than the person whose privacy is invaded. The Court stated: "Comment, fictionalization, and even distortion of a dead man's career did not invade the privacy of his offspring, relatives or friends, if they are not even mentioned therein." 345 F.2d at 420. The Court rejected as irrelevant the allegation by Al Capone's son that he had suffered special damages as a result of the telecast.

These cases are all consistent with the general proposition that the right of privacy is personal and can only be asserted by the individual whose privacy has been invaded. It dies with him and cannot be claimed by his estate. Neither can it be asserted by the anguished or outraged relatives and friends of the subject individual, who may have been disturbed by the disclosure or exploitation.

"It is settled that the right of privacy is personal and does not extend to members of the family unless they are brought into unjustifiable publicity, here not alleged, and then the right is in them. * * *" Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 9 (5th Cir. 1962).

See also Rozhon v. Triangle Publications, Inc., 230 F.2d 359 (7th Cir. 1956); Bradley v. Cowles Magazines, Inc., 168 N.E.2d 64 (Ill.App. 1960).[2]

The defendants have also asserted that the privacy of the plaintiffs was not invaded since the plaintiffs were not themselves identified by name or likeness.

As we have noted above, the right of privacy is personal and may only be asserted by the individual whose privacy is invaded. In the instant case, none of the plaintiffs was himself publicized. The only name mentioned in the course of the defendants' television comment was the name of Katherine Young. None of the plaintiffs was identified in the telecast.

Under such circumstances, the cases hold, with almost complete uniformity, that the plaintiffs have not stated a claim for invasion of their own privacy. Maritote v. Desilu Productions, Inc., su-pra; Gruschus v. Curtis Pub. Co., supra; James v. Screen Gems, Inc., supra; Bradley v. Cowles Magazines, Inc., 26 Ill.App.2d 331, 168 N.E.2d 64 (1960); Rozhon v. Triangle Publications, Inc., supra.

To sustain an action for invasion of privacy based on the publication of a person's private affairs, one necessary element is the identification of the plaintiff in the publication. If the plaintiff cannot be identified as the person who is the subject of the publication *from the published matter itself*, then there has been no actionable invasion of the right of privacy. Bernstein v. NBC, supra; Carlson v. Dell Pub. Co., 65 Ill. App.2d 209, 213 N.E.2d 39 (Ill.App. 1965).

As the cases indicate, plaintiffs cannot recover for any invasion of Katherine Young's right of privacy. Neither can they recover for an invasion of their own right of privacy, since no right of theirs was invaded. They were not publicized or identified in the broadcast in any way.

The second count of the complaint seeks recovery upon the same facts on the theory of "unjust enrichment." The plaintiffs allege that the televised statement portrayed Kathering Young in a derogatory and insulting manner so as to impugn the lineage of the plaintiffs, and that this portrayal of Katherine Young was for the defendants' own economic enrichment. The complaint further alleges that as a result of this portrayal the defendants have been unjustly enriched, for which the plaintiffs seek recovery.

It is clear that there can be no recovery upon this theory either. The

2. A few cases are occasionally cited as recognizing a so-called "relational" right of privacy. Bazemore v. Savannah Hospital, 171 Ga. 257, 155 S.E. 194 (1930); Schuyler v. Curtis, 147 N.Y. 434, 42 N.E. 22; Smith v. Doss, 251 Ala. 250, 37 So. 2d 118 (1948); Fitzsimmons v. Olinger Mortuary Assoc., 91 Colo. 544, 17 P.2d 535 (1932); Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849, 42 L.R.A.,N.S., 386 (1912). For the most part these are not recent cases and their authority, even in the states which decided them, is questionable. See e. g. Waters v. Fleetwood, 212 Ga. 161, 91 S.E.2d 344 (1956). Most of them are actually not even right of privacy cases, but rather involve breach of a contractual relationship between the parties. In any event, the Court does not find the reasoning of these cases persuasive or applicable here.

courts which have confronted this question have held that if the publication "violated no rights of the plaintiffs * * *, the defendant has not been unjustly enriched at plaintiffs' expense. * * *" Schumann v. Loew's, Inc., 135 N.Y.S.2d 361 at 369 (S.Ct.N.Y. 1954). Recovery for unjust enrichment is not a theory interchangeable with the other forms of invasion of privacy. Rather, it requires its own particular set of factual elements. Thus, in Maritote v. Desilu Productions, Inc., *supra,* where the plaintiffs sought recovery for the invasion of their privacy by publication of events in the life of their husband and father, Al Capone, the Court held that their right of privacy was not invaded since they were not publicized; and that they could not assert a claim for unjust enrichment of the defendants at their expense.

Recovery upon a theory of unjust enrichment is normally permitted only where there has been some deliberate association of the plaintiff's name or likeness with a defendant's product in connection with an advertising or promotional scheme. Jenkins v. Dell Pub. Co., 251 F.2d 447 (3d Cir. 1958), cert. den. 357 U.S. 921, 78 S.Ct. 1362, 2 L. Ed.2d 1365; Leverton v. Curtis Pub. Co., 192 F.2d 974 (3d Cir. 1951); See also 138 A.L.R. 22; Restatement of the Law, Torts, § 852. One court has pointed out the difference in the two types of invasion of privacy.

"The first and, in terms of the dictionary meaning of privacy, most obvious matter of legal concern is some measure of protection for the individual against the embarrassment, humiliation, or other injury which may result from public disclosure concerning his personality or experiences, truthful and factual though that disclosure may be. But in this situation, the interest of the public in the free dissemination of the truth and unimpeded access to news is so broad, so difficult to define and so dangerous to circumscribe that courts have been reluctant to make such factually accurate public disclosures tortious, except where the lack of any meritorious public interest in the disclosure is very clear and its offensiveness to ordinary sensibilities is equally clear.

"But there is a second type of situation where a publication is harmful and objectionable, not because of what it discloses about the individual, but because of the way it associates his personality with something else. The unauthorized use of one's story or picture in commercial advertising exemplifies this branch of the law, although there may be objectionable non-commercial uses of one's likeness or story to promote something else." Jenkins v. Dell Pub. Co., *supra,* 251 F.2d at 450.

Leverton v. Curtis Pub. Co., *supra,* also considered this question. The plaintiff was a child of ten when she was involved in a street accident in which she was almost run over by an automobile. A newspaper photographer took a picture of the plaintiff being lifted to her feet by a woman bystander. This photograph appeared in a local newspaper on the following day. Almost two years later, the defendant published the photograph in an article on traffic accidents emphasizing pedestrian carelessness and entitled "They Asked To Be Killed." Plaintiff claimed that this violated her right of privacy. The court made the following statement at page 977 of 192 F.2d: "Something was made at the argument of the point that the use of the photograph by Curtis was 'commercial.' Of course it was. So was the original publication in the Birmingham newspaper. People who run newspapers and magazines as commercial enterprises run them to make profit if they can. What adds to reader interest adds to circulation and that adds to profit. This point was directly met by Judge Clark in the *Sidis* case [Sidis v. F–R Pub. Corp., 113 F.2d 806, 138 A.L. R. 15 (2nd Cir. 1940)] already referred to. The publication in this case was not an appropriation for a commercial use."

Recovery under an unjust enrichment theory requires some deliberate association of the plaintiff's name or likeness with the defendant's products in advertising or promotional schemes. No such association is present in the instant case. The statement about Katherine Young appeared during the course of a program which was televised for profit and by which the defendant-advertisers sought to promote their products. The statement about Katherine Young itself, however, was not connected directly with the promotion of any of the products of the defendant sponsors. The reference to Katherine Young was not used for the purpose of advertising. In such circumstances, there can be no recovery for unjust enrichment of the defendants.

The defendants' motion for summary judgment on both counts of the complaint is granted. The complaint is dismissed.