McGUIRE v. ROTH ET AL.

[Cite as McGuire v. Roth, 8 Ohio Misc. 92.]

(No. 37596—Decided October 11, 1965.)*

Common Pleas Court of Tuscarawas County.

*Mr. Eugene P. Okey,* for plaintiff.
*Messrs. Smith, Renner, Hanhart & Miller,* for Mansfield Journal Co.
*Messrs Connolly & Hillyer* and *Messrs. Patrick, Patrick & Lehigh,* for Jay M. Roth.

*Judgment affirmed by the Court of Appeals, June 28, 1966.

LAMNECK, J. In this action, the plaintiff, Wade S. McGuire seeks to recover the sum of $50,000.00 as compensatory damages and the sum of $150,000.00 as punitive damages from the defendants, Jay M. Roth, and the Mansfield Journal Co. for an alleged libel published on July 29, 1965.

According to the petition, the plaintiff is one of six members of the Uhrichsville-Dennison Water Board, the defendant Jay M. Roth, is a member of said board and also is a councilman of the city of Uhrichsville, Ohio; and the defendant, The Mansfield Journal Co. is publisher of the Daily Reporter, a newspaper published in the city of Dover, Ohio, and of general circulation in Tuscarawas County.

The plaintiff claims in his petition that on July 29, 1965, the two defendants acting jointly and in concert wilfully and maliciously published on the front page of the Daily Reporter a certain article containing the following:

"UHRICHSVILLE—Jay Roth, Uhrichsville Councilman and a Twin City Water Board Member, said today some Councilmen are wondering if the Water Board is getting a 'kick-back' from Chester Engineers of Pittsburgh."

The plaintiff contends in his petition that said article was intended to mean those members of said water board, including himself, who voted to hire the Chester Engineers of Pittsburgh, an engineering firm, to provide specifications for a new water plant, were guilty of accepting a bribe from said firm.

Both defendants have filed separate demurrers claiming that the petition does not state a cause of action against them and that is the question now before the court.

The First and Fourteenth Amendments to the Constitution of the United States guarantee freedom of speech and freedom of the press.

Section 11 of Article I of the Ohio Constitution, provides in part as follows:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

Section 2739.01, Revised Code, provides in part that "in an action for a libel or slander, it is sufficient to state, generally,

that the defamatory matter was published or spoken of the plaintiff.''

This provision of the Revised Code has been materially modified by the Supreme Court of the United States in *New York Times* v. *Sullivan*, 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A. L. R. 2d 1412, in which the court said that the Constitution prohibits a public official from recovering damages for a defamatory falsehood relating to his conduct unless he proves that the statement was made from ''actual malice.''

Three of the judges who concurred in the *New York Times* *case* decision went so far as to pronounce that in their opinion the public press should be granted an absolute immunity for criticism of the way public officials do their public duty.

It has long been recognized that prosecutions for libel on government have no place in our American system of jurisprudence. But apparently the U. S. Supreme Court has not gone so far as to bar a libel suit by an individual officer of a unit of government for defamatory statements made against him if made with actual malice.

Before a public official as a member of a public administrative body can recover for an alleged published libel he must allege and prove:

1. That the words pubished imputed an indictable offense.

2. That the statement was made from actual malice.

3. That the allegedly libelous statement was made of and concerning the plaintiff.

The petition in this case pleads actual malice. On page two of the petition it is alleged that the defendants ''wilfully and maliciously published in Tuscarawas County on the front page of said newspaper'' the alleged defamatory words. Where defamatory statements are uttered by two or more defendants acting jointly and in concert, all defendants may be jointly liable, and it is proper to join them as defendants. See *Schoedler* v. *Motometer Gauge and Equipment Corp.*, 134 Ohio St. 78; 33 American Jurisprudence, Section 198, page 136.

It also has been held that where defamatory words are spoken with actual malice of a small group of persons such as a board of public officers, any individual member thereof may maintain an action against the defamer. 33 American Juris-

prudence, Section 192, page 182; *Stone* v. *Ruthman,* 30 Ohio Dec. 239, 21 O. N. P. (n. s.) 562.

It is plain from the plaintiff's petition that the plaintiff alleges that the Uhrichsville-Dennison Water Board employed Chester Engineers to provide specifications for a new water plant by a split vote and that the plaintiff was one of the members of said board who voted to employ said firm. This is sufficient to support the allegation that the allegedly libelous statement was made of and concerning the plaintiffs although the plaintiff was not specifically named. (See *New York Times* v. *Sullivan,* 95 A. L. R. 2d 1412, headnote 34.)

It therefore remains for the court to determine whether or not the allegedly defamatory words were sufficient to constitute a libel if proven to be true.

Public officials in accepting public office know that they will operate in a hardy climate, and that there may be charges of gross incompetence, disregard of the public interest, and communistic sympathies; and hints of bribery, embezzlement and other criminal conduct are not uncommon.

All public officials from the highest to the lowest are frequently subjected to adverse criticism and even the judges of our highest courts have not been immune from some of the facets in this sort of climate.

Where a public official has been subjected to unsubstantiated opinions or deliberate misstatements by a fellow citizen or of the press, he has a weapon more lethal than a possible suit for damages. Under our system of government counter argument, education and public denials are available to him to expose false charges. As was so well stated in *Cantwell* v. *Connecticut,* 310 U. S. 296, 128 A. L. R. 1352, a public official certainly has equal if not greater access than most private citizens to media of communication.

Despite the possibility that some excesses and abuses may go unremedied, we must recognize the fact that our liberties are in the long view most essential to enlightened opinion and right conduct on the part of the citizens of a democracy, and must not be impaired.

In the instant case, the plaintiff is not specifically named in the article. No member of the Uhrichsville-Dennison Water

Board is specifically charged with accepting a bribe. The defendant, Jay M. Roth, a Uhrichsville councilman, and a member of the water board is quoted as saying "some councilmen are wondering if the water board is getting a 'kick-back' from Chester Engineers of Pittsburgh." Public officials have an inherent right to wonder concerning the conduct of other public officials.

While the alleged statement may be open to criticism, the most that can be said against it is that it may be a mere distortion of fact or an innuendo concerning the plaintiff. It might be construed to constitute a hint of possible bribery, but in the opinion of the court, the language is not so broad as to impute an indictable offense. Imputation means charging. It is simply a remote allusion or reference to a person not named or a deprecatory hint.

To hold that such a statement constitutes a libel would seriously encroach upon the constitutional guarantee of free speech and the freedom of the press which are among the fundamental bases for the preservation of our personal liberties. Under such circumstances, the public welfare outweighs that of an individual who claims that his public image may have been impaired thereby.

For the foregoing reasons both demurrers are sustained.

*Demurrers sustained.*