**F & J ENTERPRISES, INC., Plaintiff,**

**v.**

**COLUMBIA BROADCASTING SYSTEMS, INC., et al., Defendants.**

**No. C 71–1240.**

United States District Court,
N. D. Ohio, E. D.

March 11, 1974.

Carter H. Donohoe, Cleveland, Ohio, for plaintiff.

Marshall I. Nurenberg, Cleveland, Ohio, for defendant Edward M. Swartz.

John L. Saltonstall, Jr., Boston, Mass., for defendant Gambit, Inc.

Marc L. Swartzbaugh, Cleveland, Ohio, for defendant Columbia Broadcasting and Mike Wallace.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

The above-captioned action was filed by F & J Enterprises ("F&J") against Columbia Broadcasting Systems Inc. ("CBS"), Storer Broadcasting Corporation ("Storer"), Mike Wallace, Edward M. Swartz, Esq., and Gambit, Inc. ("Gambit") for the publication of allegedly false, disparaging, defamatory and libelous statements about F&J's product, "Krazy Straw" on December 22, 1970, during an interview with Swartz, author of the book, "Toys That Don't Care", on a CBS program, "60 Minutes." F&J has named Gambit, as well as Swartz, in connection with its claim that Gambit, as the publisher and seller of Swartz's book, "Toys That Don't Care", and Swartz have made and continue to make and publish allegedly untrue, disparaging, defamatory and libelous statements concerning both the practices of plaintiff and the nature of its product, "Krazy Straw."

With the exception of Storer, which was dismissed as a party defendant by Court order of April 4, 1972 on motion of plaintiff, each defendant has filed a motion for summary judgment.

Although the defendants in their respective motions have submitted alternative bases as to why this Court should enter summary judgments on their behalf, each has argued that even if the Court were to find that a genuine issue of fact exists as to whether the allegedly defamatory statements made during the "60 Minutes" interview and in the book concerned the plaintiff or its product, and, moreover, even if the Court were to find a genuine issue of fact exists as to whether such publications were defamatory, that, nevertheless, summary judgments should be entered, since any pub-

lications would be privileged and constitutionally protected, as a matter of law, as the reporting of and comment upon a matter of legitimate public interest.

■ Under the existing First Amendment Standard, as set forth in New York Times, Inc. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny, as will be discussed more fully below, a Court in determining whether summary judgment should be granted on behalf of a defendant must consider the following:

1. Has the plaintiff failed to establish that any litigable issue of fact exists as to whether the allegedly defamatory remarks, if they could be defamatory of plaintiff's product, were a matter of public interest and concern?

2. If so, has the plaintiff failed to establish that a genuine issue of fact exists as to whether such statements were made with actual knowledge of their falsity or in reckless disregard of whether they were true or false?

## I. CLAIMS REGARDING STATEMENTS MADE ON "60 MINUTES":

### A. *Scope of First Amendment Protection: Matters of Public Interest and Concern*

■ The constitutional protection from liability in defamation actions afforded for the publication of matters concerning public officials, absent a showing that such publication was made "with knowledge that it was false or with reckless disregard of whether it was false or not,"[1] has been extended to the publication of matters of public interest regardless of the private or public character of the plaintiff. Rosenblum v.

Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); United Medical Laboratories v. Columbia Broadcasting System, Inc., 404 F.2d 706 (9th Cir. 1968), cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); see also, Cantrell v. Forest Publishing Co., 484 F.2d 150 (6th Cir. 1973).

The allegedly offensive remarks involved in this defamation action were made during a discussion about toys which, it was stated, might endanger the health of or even be deadly to children. Defendant Swartz, who all parties admit was asked to testify and did testify before the United States National Commission on Product Safety and who is reputedly an expert in products liability law and an advocate of consumer protection, authored the book "Toys That Don't Care." During an interview on the "60 Minutes" program, Swartz discussed various potentially dangerous products which he had mentioned in his book. Among the products discussed on the program was a clear plastic straw which was looped and twisted in various configurations.[2]

In Rosenblum v. Metromedia, Inc., *supra*, Justice Brennan in the plurality opinion discussed the constitutional privilege as one based on the need for robust debate on public issues—matters of general concern. The Courts have included within the scope of the protected area of public opinion such matters as organized crime, Cerrito v. Time, Inc., 302 F.Supp. 1071 (N.D.Cal.1969), aff'd per curiam, 449 F.2d 306 (9th Cir. 1971), and a feature story on the tragic death due to a bridge collapse, Cantrell v. Forest City Publishing Co., *supra*.

■ In view of those matters previously deemed to be matters of public

---

1. The New York Times v. Sullivan test requiring a showing that an allegedly defamatory publication was predicated upon actual malice will be discussed in Part IB, *infra*.

2. Although there is a dispute between the parties as to whether plaintiff's product the "Krazy Straw" was the straw which was discussed rather than a similar "Loonie

Straw", and, therefore, whether such remarks could serve as the basis for a defamation action at all, this particular issue is irrelevant in the present discussion since the First Amendment privilege attaches, if the standard for First Amendment protection is met, even assuming the defamatory nature of remarks.

interest for purposes of constitutional protection, common sense alone would dictate that the subject of the "60 Minutes" interview—toys which might endanger the health of children—falls within the area of public interest in which there is a legitimate need for the free flow of information to the public. Plaintiff did not argue to the contrary and thus has failed to establish the existence of a litigable issue of fact in this regard. This issue having been decided in favor of defendants regarding the remarks made on "60 Minutes" the Court will consider the issue regarding malice.

B. *The New York Times requirement of a showing of defendant's knowledge of falsity of publications made or of defendant's reckless disregard as to whether such publications were true or false:*

The Supreme Court delineated the standard for the protection from liability in defamation suits involving a defendant's First Amendment rights in New York Times Co. v. Sullivan, *supra.* As stated above, the constitutional protection which was afforded for the reporting and commenting of public officials has now been extended to the reporting and commenting on matters of public interest. In *New York Times,* the Court held that such reporting would be deemed privileged and recovery denied, absent a showing by the plaintiff that the publication was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times, supra,* 376 U.S. at 279–280, 84 S.Ct. at 726. In a subsequent case, the Court held that a

showing of "reckless disregard" would be made only when the evidence would permit "the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thomsson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). This standard has often been referred to as a requirement that the plaintiff make a showing of actual malice. The Sixth Circuit has recently held that a plaintiff, in order to avoid a directed verdict, must make a showing that an offending publication was the result of "calculated falsehood." Cantrell v. Forest Publication Co., *supra.*[3]

██ Although courts are loathe to grant a motion for summary judgment, particularly "of a case of any complexity," S. J. Groves & Sons v. Ohio Turnpike Comm'n, 315 F.2d 235, 237 (6th Cir. 1963), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57; Hart v. Johnston, 389 F.2d 239 (6th Cir. 1968), and generally construe pleadings, affidavits and the like in a light most favorable to the opposing party, the courts have often required a more rigid compliance with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure[4] when the action involves a defendant's First Amendment Rights since prolonged litigation might have a "chilling effect" on the exercise of such rights. Time, Inc. v. McLaney, 406 F.2d 565, 566 (5th Cir. 1969), cert. denied, 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969).

█ Consequently, the courts have imposed a heavy burden upon the plaintiff seeking recovery in a defamation ac-

---

3. Although in *Cantrall* the Sixth Circuit was dealing with a suit based on First Amendment privilege vis a vis the plaintiff's right to privacy rather than a suit predicated upon a defamation claim, the Court of Appeals discussed New York Times v. Sullivan and its progeny and held that when a "publication meets a reasonable standard of newsworthiness, then an action may be sustained only if malice as defined in New York Times v. Sullivan, *supra,* is established." This Court, having found no litigable issues as to whether the publications in question meet a

reasonable standard of newsworthiness, now addresses itself to whether issue of fact exists as to whether such publications were the result of actual malice or calculated falsehood.

4. Rule 56(e) provides that when a motion for summary judgment has been made and supported by briefs and affidavits, an adverse party may not rest upon mere allegations in his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

tion involving the First Amendment rights:

"Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has been purposely given the heavy burden of proving actual malice . . . When it has been established, as it has been in this case, that he cannot meet it, the First Amendment makes it incumbent upon the Court to grant defendant's motion for summary judgment." Cerrito v. Time, Inc., 302 F.Supp. 1071, 1075–1076 (N.D.Cal.1969), aff'd per curiam, 449 F.2d 306 (9th Cir. 1969).

In United Medical Laboratories v. Columbia Broadcasting System, *supra*, 404 F.2d at 713, 712, with respect to "primary question on the federal rule and standard . . . of actual malice" the Ninth Circuit held that a plaintiff "could be required to show, on a proper challenge such as by the motion and showing for summary disposition here, that it had sufficient probative substance to be able litigably to give rise to an issue of fact on whether such malice actually existed or not."

■ In light of this strict federal standard, as set forth in *New York Times* and the more recent decisions, which require a plaintiff to prove with convincing clarity, when confronted with a motion for summary judgments and supporting documents, the existence of elements with sufficient probative substance to provide a basis for a finding that a defendant had knowledge of falsehood or serious doubts as to the truth of allegedly defamatory statements, this Court concludes as a matter of law, upon due consideration of the affidavits and briefs, that F&J has failed to meet the heavy burden imposed by these cases with regard to its claim against Wallace, Gambit, and CBS arising out of the remarks made on "60 Minutes."

With regard to the statements made during the interview, defendant, Mike Wallace submitted an Affidavit to the effect that he had no knowledge at the time of the interview with Swartz that any of the statements made were false; that to his knowledge all of the statements made concerned a "Loonie Straw" not the "Krazy Straw" produced by plaintiff and were true; that he had no reason to doubt their truth because of Swartz's reputation as an expert on toy safety and CBS's verification of the accuracy of Swartz's contentions regarding a product other than plaintiff's; that at the time of the telecast he had never heard of plaintiff nor did he bear any personal malice or ill-will toward plaintiff.

In addition to the Affidavit of Wallace, CBS submitted the affidavit of Peter Poor, a television producer employed by CBS News, which stated that no reference was made to plaintiff's product during the "60 Minutes" interview; that CBS News had no knowledge that any of the statements made during the interview were false and to the best of his knowledge that such statements were true; that CBS had no reason to doubt the truth of statements made in light of certain information it had received under Poor's direction and control about Swartz's reputation as an expert on toy safety; that CBS had verified the accuracy of Swartz's contention with respect to the stories discussed by consulting with CBS' Medical Director and two consumer affairs' inspectors; and that CBS News had never heard of plaintiff at the time of the telecast nor did it bear malice or ill-will toward plaintiff.

With regard to Gambit, Lowell Thompson, President of Gambit, submitted an affidavit in which he stated that he has and always has had ultimate responsibility for the selection of books to be published by Gambit. As president he made the following representations in support of Gambit's motion for summary judgment: that he has personal knowledge of the matters to which he was attesting; that the author of "Toys That Don't Care", Swartz, was personally known to him prior to Gambit's contracting with him for the book; that he knew of Swartz's experience and reputa-

tion in the area of defective toys; that he selected Swartz as a competent expert, giving Swartz general freedom to develop the book but that on occasion Swartz made demonstrations in his presence from samples of defective toys including the demonstration in which the product "Loonie Straw" melted when cleaned in very hot water; that although the plaintiff's product "Krazy Straw" was mentioned at one place in Swartz's book, it was a product substantially similar to the "Loonie Straw," which had melted, and that it appeared self-evident to Thompson that it would be difficult to clean a plastic straw with such convolutions; that neither he nor anyone else at Gambit discussed Swartz's appearance on CBS prior to the broadcast of "60 Minutes" nor had any knowledge of the text or substance of Mr. Schwartz's comments. Finally, Mr. Thompson specifically attested that he does not have now nor did he ever have any doubt as to the accuracy of the comments made with regard to "Krazy Straw" in "Toys That Don't Care."

 In response to these affidavits, F&J contends that such statements are merely self-serving as to the issue of malice and cannot, therefore, provide a basis for granting the motions of Wallace and CBS for summary judgment. However, F&J has not set forth any specific facts to show that a genuine issue of fact exists as to whether such affidavits were made in bad faith. Plaintiff has the duty to make an affirmative showing and the "mere hope of questioning the credibility of defendants witnesses is not sufficient to resist summary judgment." Cerrito v. Time, Inc., *supra*, 302 F.Supp. at 1076. A plaintiff is required to offer evidence on the threshold issue of knowledge or doubt and mere speculation and conjecture or the mere chance that on cross-examination something might be uncovered does not fulfill that requirement. The contention, therefore, that Wallace's, Poor's, and Thompson's Affidavits are merely self serving, absent some showing on the part of

F&J that the attestations are untrue or were made in bad faith, is insufficient to divest defendants of their First Amendment privilege. See Hurley v. Northwest Publication, Inc., 273 F. Supp. 967 (D.Minn.1967), aff'd, 389 F. 2d 346 (8th Cir. 1968).

Plaintiff urges, however, that even if, as Wallace, CBS, and Gambit have sworn by affidavit, these defendants did not have actual knowledge nor entertain serious doubts as to the veracity of statements made on "60 Minutes," malice can be implied in light of certain information which these defendants should have known. Plaintiff, in this regard, urges, for example, that defendants had a duty of diligent inquiry and that if CBS, Wallace, and Gambit had not merely relied on Swartz but had conducted tests and interviewed consumers, they would have discovered what they *should* have known, that there were good straws which could be distinguished from bad straws.

 The ramifications of a Court's declaring that defendants did have this affirmative duty are awesome in light of the nature of plaintiff's claim. The chilling effect on the free flow of discussion on matters of legitimate public interest, alone, would mandate that such a proposition be rejected. However, this issue need not be reached. Apparently, plaintiff is attempting to elevate the failure to gather information, the existence of which a party may not even be aware, but which if discovered might possibly discredit that already obtained, to reckless disregard of the truth. Such interpretation of the existing standard is without foundation. The test is not whether a defendant *would* have or *should* have known, but rather whether a defendant did *in fact* have knowledge of falsity or entertain serious doubts and did *in fact* make a statement with *calculated* falsehood.

The Court rules that plaintiff has failed, as a matter of law, to establish the existence of any fact of sufficient probative value on the issues of 1)

whether remarks made on "60 Minutes" were within the legitimate public concern; 2) whether defendants Wallace, CBS, or Gambit had actual knowledge of falsity of such remarks or entertained serious doubts in this regard.

The Court rules, therefore, that with regard to the remarks made on "60 Minutes" no liability arises as to Wallace, CBS, or Gambit since each communication falls within the constitutionally protected area and are privileged as to these defendants.

The motions of CBS, Wallace, and Gambit for summary judgment with regard to F&J's claim of defamation on "60 Minutes" are granted.

 With regard to defendant Swartz, however, and his potential liability for remarks made on "60 Minutes", in light of the foregoing analysis, the Court is unable to grant his motion for summary judgment on the basis of constitutional privilege. Although the Court has made a finding as a matter of law that the subject matter of the interview on that program falls within the scope of the constitutional protected matters of legitimate public interest, the Court is unable to conclude that plaintiff has failed to establish the existence of a litigable issue as to whether the remarks made by Swartz on "60 Minutes" were made with knowledge of their falsity or with reckless disregard as to their truth or falsity. Unlike the other defendants in this action, Swartz did not submit an affidavit challenging the plaintiff's allegations in this regard. Since actual malice is the primary question on which constitutional privilege turns, a defendant must do more than file his motion for summary judgment in order to require such strict compliance with Rule 56(e) and to impose upon plaintiff the "heavy burden" of showing there is "sufficient probative

substance to be able litigably to give rise to an issue of fact on whether such malice actually existed or not." *United Medical Laboratories, supra* 404 F.2d at 712.

 Plaintiff alleges, and defendant Swartz does not dispute, that "Toys That Don't Care," which Swartz authored, does make direct reference to plaintiff's product. Plaintiff's allegations that Swartz knew of its product, and that in view of this knowledge, that Swartz's remarks on "60 Minutes," if they could be defamatory of plaintiff's product, were made with knowledge of their falsity or with reckless disregard of their truth, are of sufficient probative value to give rise to an issue of fact as to actual malice, absent an affidavit or other showing to the contrary. Swartz's motion for summary judgment on the basis of First Amendment privilege must be denied.

### C. *Defamatory matter must be spoken of the plaintiff*

Swartz, however, also seeks summary judgment regarding plaintiff's claim for defamation, as a result of the "60 Minutes" interview, on the grounds that the remarks made on that program did not refer to plaintiff's product, but were aimed specifically at another, albeit similar, product.[5]

Ohio law on defamation is applicable. See Restatement 2d, Conflict of Laws § 150(3) (1971).

Ohio Revised Code § 2739.01 provides in pertinent part:

In an action for a libel or slander, it is sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff. If the allegation is denied, the plaintiff must prove the facts, showing that the defamatory matter was published or spoken of him.

---

5. Wallace, CBS, and Gambit also raised this argument as grounds for the Court's granting summary judgment on their behalf, ·but since the Court found that any publications made on "60 Minutes" by these defendants, even if the publications could be found defamatory of plaintiff's product, were privileged, it was not necessary for the Court to reach this issue.

In its complaint, F&J alleges that the following defamatory commentary between defendants Swartz and Wallace was spoken of its product, "Krazy Straw":

Wallace: Now this would seem to be a fairly harmless instrument, it's called a "Looney Straw" and I suppose it's to make milk drinking more attractive and certainly you can't swallow it.

Swartz: It's the carton that you discard that's really objectionable. It tells the whole story, Michael . . .

Wallace: Unbreakable, washable, non-toxic, safe and sanitary . . . Why, what's wrong with that?

Swartz: Well now if you would tip the card over and read the bottom line, Mike . . . ·

Wallace: Do not use hot water to clean the straw.

Swartz: Now, if you drink milk with it and cannot use hot water to clean it, how in God's name are you going to get all the milk bacteria out of the straw, considering all its tortuous pounded, rounded curves . . . . There's no way to sterilize this instrument after it's been used for milk and the milk bacteria, doctors will tell you, is one of the most deadly known to man.

In its Brief in Opposition to defendants' motions for summary judgment, plaintiff does admit that the straw which was displayed simultaneously with the foregoing commentary was the "Loonie Straw." F&J does not dispute that the packaging carton referred to and from which Wallace read was that of the "Loonie Straw."

The language of § 2739.01 O.R.C. states clearly that a plaintiff must show that an allegedly defamatory statement was spoken of him (or his product). F&J contends, however, that although no reference was made at any time during the broadcast to the "Krazy Straw," nor was the straw which was displayed a "Krazy Straw," that summary judgment cannot be granted because the Court is bound to look beyond the spoken or printed words to determine the *true* identification of the one libeled, that the Court must ascertain to what or to whom such words actually referred.

F&J argues that a factual dispute exists as to whether or not "Krazy Straw" was the actual object of the defamatory remarks. The thrust of F&J's opposition to summary judgment in this regard is based upon the following: 1) that the straw visually displayed was "most nearly identical" to the "Krazy Straw"; 2) that the manufacturer of "Loonie Straw" had entered into a consent decree with F&J in a patent infringement suit prior to the broadcast of "60 Minutes" and that, as a consequence, at the time of the broadcast "Krazy Straw" was the sole manufacturer of such a straw; 3) that at the least, the remarks created confusion because the straws were so similar in name that the viewing public was lead to believe that the reference to a "Loonie Straw" was understood as a generic or class reference. However, the cases on which F&J relies for its support are inapposite here.

F&J contends that although "Krazy Straws" were never specifically mentioned, that the name of the person or object defamed need not be given, that a description or photograph may frequently serve as a more positive identification F&J cites, *inter alia* Nappier v. Jefferson Standard Life Insurance Co., 322 F.2d 502 (4th Cir. 1963) and Peay v. Curtis Publishing Co. et al., 78 F. Supp. 305 (D.D.C.1948). F&J also relies on this Court's decision in Young v. That Was The Week That Was, 312 F. Supp. 1337 (N.D.Ohio 1969), aff'd per curiam, 423 F.2d 265 (6th Cir. 1970), in which the Court discussed the use of a plaintiff's picture, as a sufficient identification to give rise to a right of privacy action.

However, these cases cited contemplated a factual situation which is lacking here. This is not a case in which the

"Krazy Straw" was shown and was not identified or was identified vaguely as a "Looney Straw". Indeed, there is no factual dispute that the straw which was both displayed and named was identified as the "Loonie Straw". The language in the cases cited above could not logically be interpreted as extending a cause of action for defamation to an individual who was not identified by name, nor the subject of a photograph, but merely looked very nearly identical to the person in the photograph. "The civil action is personal to the plaintiff and cannot be founded on the defamation of another . . . " Prosser, Torts 744 (4th Ed. 1971).

In addition, plaintiff's use of the *Young* case decided by this Court is misleading. The Court did discuss identification of a plaintiff by the use of a photograph, but this discussion related to a theory of recovery for unjust enrichment. The primary holding of that case, on the other hand, focused on the requirement that "the right of privacy is personal and may only be asserted by the individual whose privacy is invaded." *Supra,* 312 F.Supp. at 1341. The Court granted summary judgment in *Young* against plaintiffs who asserted a claim for an invasion of their right to privacy because of certain remarks made about a deceased relative, Katherine Young. The court held that none of the plaintiffs could assert such claim, since none was himself, publicized. The Court finds, therefore, that plaintiff's presentation of facts as they bear on the issue of the identity of the product allegedly defamed is insufficient as a matter of law under § 2739.01 O.R.C. and the cases cited to give rise to a genuine issue of fact.

Beyond this, however, plaintiff directs the Court to the *United Labs* decision with regard to its claim that a plaintiff's cause of action can survive a defendant's motion for summary judgment if there is a genuine issue of fact as to whether the plaintiff's product was defamed through "special reference," although not identified expressly. The *United Labs* case involved a series of broadcasts by a television network on twenty-two mail order laboratories.

The Ninth Circuit Court of Appeals in *United Labs,* 404 F.2d at page 708, stated by way of *dicta* that "the question of reference in defamation, whether alleged to exist on a class or special basis, can sufficiently be a matter of what application actually has been given to the publication by reasonable understanding and belief." However, the Court made this observation on the basis of Oregon decisions in defamation and libel suits. With regard to whether a class reference was sufficient to give rise to a cause of action, the Court indicated that courts have attempted to limit the test regarding whether the defamation of the class or group could reasonably be understood to refer to each member. Such limitations have been based on the size of the group, the legal uncertainty or remoteness of reference and the nature or circumstances of the defamation. And, the Court noted that such exceptions perhaps cannot be given any definitiveness.

In a recent Ohio case, Maguire v. Roth, 37 O.O.2d 35, 8 Ohio Misc. 92, 219 N.E.2d 319 (1971), the Court held that under Ohio law, where the alleged defamation was aimed at a small board of public officials, without specific mentioning of the names of individual members, the individual members could maintain an action under § 2739.01 O.R. C.

However, this case seems to limit the holding to cases in which the alleged defamation was of a specific and well-defined class, where the *class* is actually referred to and as a result of the *identification of the class,* individual members' causes of action are derived therefrom. However, on the facts as presented by a transcript of the relevant portion of the "60 Minute" commentary, this Court is not able to find that a genuine issue of fact exists as to whether the alleged defamation made reference

to a small and well-defined class or, in fact, any class at all of which "Krazy Straws" could reasonably be deemed an individual member.

The commentary on "60 Minutes" did make reference to a class. That class was comprised of allegedly defective toys which could be injurious to children. To establish that class, various toys were selected, discussed as to defect, displayed and most were identified by name. In the case of "Loonie Straw," the defect discussed pertained to the packaging card attached to it which Swartz said, "tells the whole story." Referring to that card, Swartz stated that the "Loonie Straw" fell within the defective toy category of potentially dangerous toys because it could not be submerged in hot water, as was printed by the "Loonie Straw" manufacturer on the card.

■ That plaintiff cannot contend that this portion of the commentary made reference to a *class* of all straws is obvious from plaintiff's own claim in its Affidavit that the remarks made on "60 Minutes," although true about "Loonie Straw" were false and defamatory of "Krazy Straws" because "Krazy Straw's" package does not say that the straw cannot be washed in hot water, and that, indeed, "Krazy Straws" can be washed in hot water without melting and are safe and sanitary. The very language which plaintiff claims was defamatory as to the class of all straws or to it by reference is the language which Swartz relied as "telling the whole story" with regard to why the "Loonie Straw" fell within the defective toy class and was potentially dangerous to children.

■ The defendant Swartz could not have been under an affirmative duty, as this Court interprets § 2739.01 O.R.C., to specifically identify *as not defective* those products which he neither mentioned nor displayed. To impose such a rule, would render meaningless the language of § 2739.01 O.R.C. that a plaintiff must allege that the words were spoken *of him*. The gravamen of such a cause of action, where no words were spoken of the plaintiff nor even a photograph of him shown, would then become defamation by reference for lack of qualification. Although truth would be an absolute defense in a suit brought by the person or class of persons *about whom* the words were spoken, that defense would not be available to a defendant in a suit based upon this defamation by reference theory. In other words, the defendants could affirmatively plead truth as a defense in an action brought by "Loonie Straws," which product was specifically identified as defective. However, having successfully defended on this ground in a suit brought by "Loonie Straws," the truth of the words *actually spoken* would not be a defense in a suit brought with regard to the "Krazy Straw." Presumably recovery could be had, not because the plaintiff's product was identified, but because words were *not* spoken of it. Such a conclusion would simply be contrary to the law.

■ The remaining basis upon which plaintiff argues that its product was in fact the straw defamed and that summary judgment may not be granted is that the manufacturer of "Loonie Straw" entered into a consent decree with F&J in the course of a certain patent infringement which case was based upon the alleged unauthorized use of "Krazy Straw's" patented configuration. However, the Court finds the existence of such a decree insufficient as a matter of law to give rise to an issue of fact as to whether the straw which was displayed with its package and the commentary of its potential danger, was in fact the "Krazy Straw."

In light of the foregoing, Swartz's motion for summary judgment on plaintiff's defamation claim arising out of the interview on "60 Minutes" is granted.

## II. CLAIMS REGARDING STATEMENTS MADE IN "TOYS THAT DON'T CARE"

### A. Scope of First Amendment Protection: Matters of Public Interest and Concern

Plaintiff , seeks to recover against Swartz and Gambit for the statements published in the book, "Toys That Don't Care." The scope of the constitutional privilege for publication of matter of legitimate public concern has been set forth above in Part I, A. The Court has already found, as a matter of law, that the remarks made on "60 Minutes", concerning toys which might be defective and, therefore, injurious to children, fall within the privileged area. Plaintiffs have failed to establish that a genuine issue of fact exists as to whether those matters contained in Swartz's book also fall within First Amendment Protection. This aspect of the constitutional standard for protection from liability in defamation actions having been met, the Court will deal with the remaining question of whether plaintiff has established the existence of a litigable issue as to whether the publication by Swartz and Gambit of statements regarding plaintiff's product, if they could be defamatory of it, were made with actual malice or were the result of a calculated falsehood.

### B. The New York Times requirement of a showing of defendant's knowledge of falsity of publications made or of defendant's reckless disregard as to whether such publications were true or false:

New York Times, and the more recent cases defining the requirement of a showing of actual malice have been fully discussed above in the section on "60 Minutes." Although the Court has found that there is no issue of fact as to whether the product referred to on "60 Minutes" was plaintiff's product, there is a specific reference to "Krazy Straws" in Swartz's book.

However, this in itself, even assuming the reference is defamatory, does not bar the Court's granting summary judg-ment if defendants can establish that no litigable issue of fact remains as to the constitutionally privileged nature of the publication.

For purposes of this inquiry regarding malice and the liability of Gambit in connection with the book, "Toys That Don't Care," the affidavit of Lowell Thompson in support of Gambit's motion for summary judgment is equally applicable here and serves as a basis for the Court's conclusion that F&J has failed to establish, in the face of a proper challenge by Gambit, that there remains a triable issue regarding whether Gambit had knowledge of the falsity of the remarks contained therein or had serious doubts as to the truth of these remarks. Accordingly, Gambit's motion for summary judgment as to F&J's claim regarding "Toys That Don't Care" is granted.

As to defendant Swartz, however, the motion for summary judgment must be denied. There is no dispute that "Toys That Don't Care" refers to "Krazy Straws" as one of the offending items—defective and dangerous toys. And, as stated above in Part I, B, absent a proper challenge by a defendant, the Courts are not likely to impose the heavy burden on a plaintiff, which the First Amendment Protection contemplates, to establish with convincing clarity that there is a triable issue as to whether a defendant entertained serious doubts as to the truth of his remarks or made allegedly defamatory remarks predicated upon a calculated falsehood.

Although, defendant Swartz incorporated by reference in his motion for summary judgment a letter from a consulting engineers firm, involved in consumer protection, a member of which firm had examined the "Krazy Straw" at Swartz's request and had reported that he found the same not to lend itself to sterilization because of its configuration, the inquiry and the report are not conclusive, as a matter of law, as to whether Swartz himself entertained serious doubts regarding whether plaintiff's product might be a potential danger to children. Defendant Swartz has

failed to raise a sufficient challenge to plaintiff's allegations of malice, and his motion on the basis of First Amendment privilege must be denied.

## C. ALTERNATIVE GROUNDS FOR SUMMARY JUDGMENT

Upon due consideration of Swartz's other bases for summary judgment, the Court is unable to conclude, as a matter of law that plaintiff has failed to establish that a genuine issue of fact exists as to whether Swartz's remarks made in "Toys That Don't Care" were defamatory of plaintiff's product.

Swartz's motion for summary judgment in this regard, is therefore, denied.

## III. CONCLUSION

The motions of CBS, Wallace, Gambit and Swartz as to the plaintiff's claim for defamation arising out of the "60 Minutes" broadcast are granted.

Gambit's motion for summary judgment as to plaintiff's claim for relief regarding the publication of defamatory material in "Toys That Don't Care" is granted. The motion of defendant Swartz for summary judgment as to plaintiff's claim regarding "Toys That Don't Care" is denied.

It is so ordered.