Rose Annerino, Plaintiff-Appellant, v. Dell Publishing Company, Defendant-Appellee.

Gen. No. 47,180.

First District, Second Division.
April 15, 1958.
Rehearing denied May 13, 1958.
Released for publication May 21, 1958.

 

William D. Larkin, and Frank Kirk, of Chicago, for appellant.

Tenney, Sherman, Bentley & Guthrie, of Chicago (Thomas J. Kerwin, of counsel) for defendant-appellee.

JUSTICE LEWE delivered the opinion of the court.

This suit arises from an alleged invasion of the right of privacy of plaintiff, Rose Annerino, through the use of her photograph in a publication of defendant, The Dell Publishing Company.

Defendant filed a motion to strike the complaint, alleging that in reality it was a suit for defamation by libel, and having been filed more than one year after such action accrued, was barred by the statute of limitations, and that, in any event, it failed to state a cause of action because the story in which plaintiff's photograph was used was a newsworthy occurrence. The court sustained the motion to strike the complaint, and the action was dismissed. Plaintiff appeals.

The facts as taken from the pleadings show that in October, 1954, one Gus Amadeo, was held for arraignment in the Criminal Courts Building in the city of Chicago. While there, a girl friend of Amadeo smuggled a gun to him in a detention cell. He escaped. Several days later, Charles Annerino, a detective on Chicago's Robbery Detail, while in a tavern on a routine check with another detective, encountered the armed Amadeo. While wrestling with Detective An-

nerino's partner, Amadeo's gun went off several times, one of these shots fatally wounding Charles Annerino. Again, Amadeo fled.

The ensuing manhunt and eventual killing of Amadeo in a gun duel with Chicago's police received all the publicity warranted by such an event. The role of Charles Annerino was a necessary element of the story. The night he was shot he was rushed to the hospital, where his wife, the plaintiff, came to meet him. While there, plaintiff learned that her husband was dead. In a condition of shock and grief, pictures were taken of her and seemingly her every word was recorded.

Three months after the incident, defendant in one of its magazines, INSIDE DETECTIVE, retold the story in an article, entitled, "If You Love Me, Slip Me a Gun." It is the use of her photograph in connection with this story that plaintiff complains is an invasion of her privacy.

Plaintiff alleges that defendant used her photograph in connection with a story in one of its magazines; that prior to the alleged publication, plaintiff had guarded the privacy of her personal life and not sought to exploit her personality, physical condition or condition of bereavement for profit or commercial gain; that defendant for its own profit and gain did appropriate her photograph and exploit her personality; and that her personality was invaded by such use, which invasion disturbed and destroyed her peace of mind and subjected her to the contempt, ridicule and inquisitive motives of the public. Plaintiff further alleges that such use was without her consent or knowledge. The magazine was attached to and made a part of the complaint.

The basic issue is whether the complaint is sufficient to allege an unwarranted invasion of plaintiff's right of privacy.

In the case of Eick v. Perk Dog Food Co., 347 Ill. App. 293, the court recognized for the first time in this state an individual's right to privacy. In describing the nature of the action, the court said at page 299,

"Basically recognition of the right of privacy means that the law will take cognizance of an injury, even though no right of property or contract may be involved and even though the damages resulting are *exclusively* those of *mental anguish*. A person may not make an *unauthorized appropriation* of the personality of another especially his name or likeness, without being liable to him for mental distress. . ." (Emphasis ours)

While that case expressly limited application of the rule to a use of the photograph of a person who was not the subject of newsworthy interest, the court in adopting the broad language of the majority of the states in describing the "common-law" right, as opposed to an action created by statute, intended to protect the individual from more than use for advertising or trade purposes. The court in Eick v. Perk Dog Food Co., 347 Ill. App. 293, fully intended to protect inviolate the personality of the individual. (See also Sarat Lahiri v. Daily Mirror, 162 Misc. 776, 295 N. Y. S. 382, and Cason v. Baskin, 168 A. L. R. 430.)

Defendant argues that the article is a factual account of the escape of a dangerous criminal, the heroism of a public servant and the eventual vindication of justice and good, and that, therefore, the use of plaintiff's photograph is not actionable. Looking at the story itself, the very nature of the event portrayed in defendant's publication is evidence of its newsworthy value.

It is further conceded that there are many invasions of privacy that the courts have decided are lawful and for which the invaders may not be punished, particularly where the invasions are justified as a *proper*

208

*exercise* of freedom of the press. (Jones v. Herald Post Co., 230 Ky. 227, 18 S.W.2d 972, 973, and 41 Am. Jur., Privacy sec. 23.) However, this rule is not a license by which various press media may overstep the bounds of propriety and decency and thereby justify an invasion of the solitude of the individual. The court in Hazlitt v. Fawcett Publications, 116 F. Supp. 538, after emphasizing that a public figure could not object to "fair reports" and "fair news accounts" of a homicide, went on to point out at p. 545 that,

"If so much of the story as is relied on was fictionalized and dramatized, I may not rule as a matter of law, that it was of legitimate public interest because informational and on that account not actionable. Cason v. Baskin, 168 ALR 430; Garner v. Triangle Pubs. 97 F. Supp. 546. . . For to the extent that the defendant indulged in fictionalization, the inference gathers strength that the dominant characteristic of the story was not genuine information but fictional readability conducive to increased circulation for the magazine. . . Thus this count may be deemed to state an actionable claim on the theory that the published story was in essence not a vehicle of information but rather a devise to facilitate *commercial exploitation.*" (Emphasis ours)

Reading the article itself in the light of plaintiff's allegations of "exploitation" for the personal "gain and profit" of defendant, this court cannot say as a matter of law that it was solely a factual account and published for its informational value as defendant contends. The title of the article, "If You Love Me, Slip Me a Gun," would hardly apprise one of its alleged nature. The "story" impression and fictional value are further heightened by the subtitle in bold type and sharing near equal prominence on the first page of the "account" which reads, "She lifted her ballerina skirt. 'There, honey, fastened to the gar-

209

ter. . .' " The sensational and dramatized title and subtitle described above are not the only indications that the article complained of here is not essentially a "vehicle of information." The defendant in retelling the story adopts a narrative form and to improve continuity indulges in speculation as to the personal thoughts and remarks of Amadeo and other principals in the story. Furthermore, it goes into great detail regarding the personal "affairs" of Amadeo with the woman who brought the gun to him.

██ In deciding whether plaintiff has stated facts sufficient to allege a cause of action, the court must look to the plain and fair intendment of the language used by plaintiff and the facts which may be reasonably implied from such language. "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. Chap. 110, par. 42 (2).) Plaintiff here has made the publication an essential allegation of her complaint. (Ill. Rev. Stat. Chap. 110, par. 36 and In re Estate of Frayser, 401 Ill. 364.) There is no difficulty in ascertaining that what plaintiff complains of is not news reporting, but the use of her photograph in connection with a "story" which makes a strong appeal to the idle and prurient. This is sufficient to raise a question of fact.

Defendant's contention that plaintiff, by attaching the article to her complaint and swearing to the truthfulness of matters contained therein, allowed the court to assume the veracity of all facts in the story is equally without merit. Her charges of commercial exploitation raise the opposite presumption. The purpose in attaching the article was limited to that of setting out the use relied upon as an invasion of plaintiff's privacy. Defendant can not now argue that plaintiff had any other purpose in mind than that manifested in the complaint.

210

■ For the reasons stated above, we are of the opinion that the complaint sufficiently alleges an unwarranted invasion of plaintiff's right of privacy. It follows, therefore, that defendant's contention that the complaint states a cause of action for defamation by libel, barred by the statute of limitations, is equally without merit.

For the reasons above indicated the judgment order of dismissal is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

KILEY, P. J. and MURPHY, J., concur.