Mamie Bradley, Plaintiff-Appellant, v. Cowles Magazines, Inc., Vernon C. Myers, Gardner Cowles, and William Bradford Huie, Defendants-Appellees.

Gen. No. 47,887.

First District, First Division.

May 16, 1960.

Rehearing denied June 13, 1960.

Joseph M. Tobias, of Chicago, for plaintiff-appellant.

Kirkland, Ellis, Hodson, Chaffetz, and Masters, of Chicago (Howard Ellis, Don H. Reuben, and James E. Beaver, of counsel) for defendants-appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff brought this action for damages for violation of the right of privacy and for libel. The trial court dismissed the suit on motion of Cowles Magazines, Inc., (Cowles) because of the insufficiency of the complaint. From that order an appeal was taken. Plaintiff concedes that the statute of limitations has run against the libel action, and there is no need to make any further reference thereto. The action is based on certain articles appearing in Look Magazine (Look), owned and published by defendant Cowles, purporting to reveal facts concerning the murder of plaintiff's child.

Emmett Till, a boy of 14, was murdered in August 1955. Five months after his death, Look published the first of the two articles here in question, giving what purported to be the facts of the murder. One year later, or seventeen months after Emmett Till's death, Look published its second article. These articles were attached as exhibits to the complaint, and we may assume that this was a highly publicized and nation-

ally discussed case involving, as it did, the horrible murder of a 14-year old boy.

The legal question before us is, shall the right of privacy be extended to provide damages for the anguish of a mother, caused by a publication concerning the murder of her son, although she herself was not featured or substantially publicized. The articles purport to give an account of the murder as related to a reporter by the two men who were accused and were acquitted. In one sentence only does it refer to plaintiff, saying that she, the mother of the murdered boy, giving her address, was notified of his kidnapping.

Plaintiff argues that the case law of Illinois supports the action, "although not expressly as to the particular situation." There are two cases in Illinois that bear directly on the right of privacy—Eick v. Perk Dog Food Co., 347 Ill. App. 293, 106 N.E.2d 742, and Annerino v. Dell Pub. Co., 17 Ill.App.2d 205, 209–10, 149 N.E.2d 761, 763. Eick v. Perk Dog Food Co., supra, was the first opinion of a reviewing court in this state on the subject. For that reason it covered fully the law of other jurisdictions, analyzed the nature of the right, considered its origin, and gave the various views and aspects of the problem. Whatever was said in that case must be considered in this context. Its holding is limited to its final conclusion— that a private person would be protected against the use of his portrait for commercial advertising purposes. It was recognized that any development of the right beyond that would be subject to scrutiny as particular cases were brought to the court and distinction or extension defined. Eventually, a body of more specific principles than those approved in the Eick case will perhaps be formulated.

■ Guaranty of the right of privacy is not a guaranty of hermitic seclusion. We live in a society geared

333

in the opposite direction; a society that makes public demands and imposes public duties. Every election thrusts upon the shyest and most retiring citizen demands and obligations. A political campaign brings forth public insistence that he vote. Every television and radio program blares forth exigent calls to do or buy this or that. The census taker asks for the furnishing of private information. The mail brings importunities of every kind. The telephone serves a like purpose. Finally, the revenue collector pries into the very heart of what used to be a person's private affairs—how much he earned, how much he spent, how much he gave away. This is the background of custom and habit against which the right of privacy must be defined. To find an area within which the citizen must be left alone is the purpose of the action. Even so, chance or destiny may propel a private citizen into the public gaze. It is important, therefore, that in defining the limits of this right, courts proceed with caution.

In the Eick case, supra, we were on sure ground. There, the plaintiff had a clear right to be protected against the use of her likeness in order to further a commercial enterprise. The fact that her damages were exclusively the result of mental anguish did not defeat her right. What we did was to isolate and overcome that particular obstacle to the court's recognition of plaintiff's right of privacy.

In the Annerino case, supra, the court went a little further. There, the widow of a detective who had been killed by a gangster sued to recover damages on account of the use of her photograph in a publication called "Inside Detective." The magazine retold the story in an article entitled, "If You Love Me, Slip Me A Gun." It was the use of her photograph in that connection that constituted an invasion of plaintiff's right of privacy, although the usage was not commercial, as in the Eick case. It was a slight and very

334

proper enlargement of the principle laid down in the Eick case.

In Kolb v. O'Connor, 14 Ill.App.2d 81, 142 N.E.2d 818, this court refused to extend the right of privacy to require the return to an individual of records of identification made in connection with an arrest.

On the federal side, there are several cases having to do with Illinois law. In Branson v. Fawcett Publications, Inc., 124 F. Supp. 429 (E.D. Ill. 1954), the plaintiff, who raced automobiles, sued to recover, as a violation of the right of privacy, for the publication of his picture in an automobile accident. He claimed he was "kidded about the picture and thereby suffered mental anguish." The court found the picture too blurred to be a reproduction of the likeness of any person.

In Rozhon v. Triangle Publications, Inc., 230 F.2d 359 (7th Cir. 1956) the plaintiff sued to recover damages by reason of the publication in the defendant's magazine of an article referring to the plaintiff's son, who had died from narcotics poisoning. The court held that the plaintiff had been catapulted into an area of legitimate public news interest.

If we go to other states, we find cases contrary to plaintiff's position. In Kelley v. Post Publishing Co., 327 Mass. 275, 98 N.E.2d 286, 287–88 (1951), the plaintiff sued to recover because of the publication of a picture of his daughter who was killed while riding as a passenger in an automobile. The court said:

"Many things which are distressing or may be lacking in propriety or good taste are not actionable. Moreover, if the parents had a cause of action in a case like the present there would seem to be no reason why other members of the immediate family, the brothers and sisters, whose sensibilities may also have been wounded should not also be permitted to sue. The only reference to the plaintiffs was that the girl whose body appeared in the photograph was their

335

daughter. This can hardly be said to interfere with their privacy. At least, if there is such a right in this Commonwealth we would not be prepared to extend it to a case like the present."

In Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491 (1939), the plaintiff brought an action against a newspaper for publishing a picture of his wife in connection with an account of her suicide. The court held that where one, willingly or not, becomes an actor in an occurrence of general or public interest, it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence. The court also held that a right of action for the invasion of the right of privacy was purely personal, and that the plaintiff must prove invasion of his own right of privacy before he can recover. To the same effect is Kelly v. Johnson Publishing Co., 160 Cal.App.2d 718, 325 P.2d 659 (1958).

■ It is admitted by plaintiff that there is no well defined precedent to support her case. She derives some comfort from the general language and purport of various decisions. But taken in their true context, we see no basis for extending the right of privacy to this case.

The judgment as to Cowles will be affirmed. As to the three other defendants, one had filed a special appearance and motion to quash, which was never heard, and two had not been served. As to these, the court could not properly enter judgment, and we must reverse the judgment and remand the cause as to them.

Judgment as to Cowles Magazines, Inc. affirmed.

Judgment as to Vernon C. Myers, Gardner Cowles and William Bradford Huie reversed and cause remanded.

DEMPSEY, P. J., and McCORMICK, J., concur.