Mafalda **MARITOTE**, Administratrix of the Estate of Alphonse (Al) Capone, Deceased, Mae Capone and Albert Capone, Plaintiff,

v.

**DESILU PRODUCTIONS, INC.**, a corporation, Columbia Broadcasting System, Inc., a corporation, and Westinghouse Electric Corporation, a corporation, Defendants.

No. 60 C 84.

United States District Court
N. D. Illinois, E. D.
June 12, 1964.

Harold R. Gordon, Chicago, Ill., for plaintiff.

Lord, Bissell & Brook, Chicago, Ill., for defendant.

MAROVITZ, District Judge.

Motion of defendant to dismiss the third amended and supplemental complaint.

This is a civil action in seven counts brought by the administratrix of the estate of Alphonse Capone, deceased, and by the wife and son of said Alphonse Capone. Jurisdiction is founded upon diversity of citizenship.

The third amended and supplemental complaint, presently before this court, undertakes to state two distinct causes of action. The first cause, embodied in Counts I–IV (hereinafter referred to as the PROPERTY claim) is brought by one Mafalda Maritote, the administratrix of the estate of Alphonse (Al) Capone. Plaintiff seeks to recover by way of quasi-contract from defendants Desilu Productions, Inc. (Count I), Columbia Broadcasting System, Inc. (Count II) and Westinghouse Electric Corp. (Count III), asserting that said defendants were "unjustly enriched" through an alleged appropriation of the "name, likeness and personality" of Al Capone, without the consent of the widow, son or administratrix, for use in a television broadcast in April and October, 1959, entitled, "The Two-Part Drama—The Untouchables." It is alleged that said broadcasts were produced by Desilu, telecast by CBS, and sponsored by Westinghouse.

Count IV, brought against Desilu, alone, complains of telecasts made subsequent to the commencement of the action, on the weekly series, "The Untouchables." (Count IV will hereinafter be referred to as the SUPPLEMENTAL PROPERTY claim.)

Counts V, VI, and VII undertake to state a separate cause of action in favor of Mae Capone and Albert (Sonny) Capone, the widow and son of the deceased. This cause of action arose by way of an amended complaint, filed pursuant to leave granted by Judge Julius Miner on July 6, 1962. Count V, Paragraphs 1 through 6 and Paragraph 22, Count VI, and Count VII complain of the initial two-part telecast and are brought against Desilu, CBS and Westinghouse respectively. Paragraphs 1 and 7 through 23 of Count V purport to be a supplemental complaint directed at the subsequent series of telecasts. (These Counts will hereinafter be referred to as the PRIVACY claim, and the SUPPLEMENTAL PRIVACY claim, respectively.) The plaintiffs in this second cause of action allege an invasion of their right of privacy by the defendants, although they themselves were not publicized in the allegedly offending telecasts.

Plaintiff Maritote seeks damages against Desilu in sums totaling three million dollars, and against the other two defendant corporations in the sum of $250,000 each. Plaintiffs Mae and Albert Capone demand damages against Desilu in the sum of two million dollars and against the other two defendant corporations in the sum of $250,000 each.

■ Defendants have filed a motion to dismiss for failure to state a cause of action. Under the rationale of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this

court, hearing a diversity action, must apply the substantive law of Illinois to the facts at bar.

Having carefully read the voluminous briefs supplied by able counsel on both sides, this court must decide two complex, multi-faceted questions:

1) The court having recognized the fact that there exists no right of privacy in a dead man under Illinois law, may the estate of a deceased person recover in quasi-contract for an alleged appropriation of a property right in the name, likeness, and personality of said deceased person?

2) Under the law of the State of Illinois, may the plaintiffs maintain an action for invasion of their right of privacy by telecasts respecting their deceased relative, when they themselves were not publicized in the said telecast?

As a preliminary observation, it is the opinion of this court that plaintiffs should not under any circumstances be able to recover under both causes of action. Should this court imply the existence of a contract respecting the alleged property rights plaintiffs should not justly be permitted to complain that their privacy has been invaded. A party should not be able to contract away a property right and then reverse its field and complain of invasion.

1) The property claim raises three distinct issues:

a) Shall this claim be treated as an invasion of privacy suit, maintainable only by Al Capone during his lifetime?

b) Are the telecasts in the public domain, and if so, is this cause of action therefore barred?

c) Are the telecasts protected by the Constitutionally-based right of freedom of speech and press?

In view of the court's affirmative answer to the initial query, there is no need to consider the remaining two. Plaintiffs have attempted to evade the personal nature of an invasion of privacy suit, by attaching to it a new label, that of appropriation of a property right.

Yet, despite the label, such an action remains one for invasion of privacy, under Illinois law, and must be subject to the restrictions imposed thereon.

Invasion of privacy is not truly a common law tort, having arisen at the turn of the century. It is plaintiff's contention that this right grew out of a pre-existing property right in intangibles which still exists as a moving force in the law. This argument cannot be accepted. It would seem clear that no such right existed prior to the much quoted law review article by Samuel Warren and Louis D. Brandeis, from which the recognition of a privacy right stems. See The Right of Privacy, 4 Harvard Law Review 193 (1890). If indeed the "right of privacy" was already encompassed within a recognized property right area, there would have been no need whatever for the courts to adopt the new right of privacy. Rather, it was *because* no such right existed in this area that the learned authors and the courts came to recognize the privacy approach.

Quoting from the Harvard Law Review article at p. 213:

"We must therefore conclude that the rights, so protected, whatever their exact nature, are not rights arising from contract or from special trust, but are rights as against the world; and, as above stated, the principle which has been applied to protect these rights is in reality not the principle of private property, unless that word be used in an extended and unusual sense * * *."

The right sought to be asserted here falls squarely within the right of privacy concepts. Dean William L. Prosser, generally regarded as this country's leading authority on the law of torts, has classified invasion of privacy into four distinct actions. See Privacy, 48 Cal. L.Rev. 383 (Aug., 1960); Prosser on Torts, 2d. Edit., p. 639. The fourth action reads as follows:

"4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness."

This tort, which seems clearly to fit the situation at bar, is said by Dean Prosser to consist of "the appropriation of some element of the plaintiff's personality for a commercial use." That is precisely the factual situation before us, and we are unable to dispute Dean Prosser's logic.

In Illinois, much attention has been showered upon the case of Eick v. Perk Dog Food Co., 347 Ill.App. 293, 106 N.E. 2d 742 (1952), the initial invasion of privacy holding in Illinois. In that case the court recognized the privacy principle and held that a private person would be protected against the use of his portrait for commercial advertising purposes. We fail to understand the distinction between this case and the appropriation of a man's personality for use on a television show. Plaintiff argues repeatedly that the gross nature of this abuse, involving television rather than a publication, distinguishes the facts at bar from prior offenses. And yet when the need is there, plaintiff feels free to fall back on a withdrawn opinion in Wagner v. Fawcett Publications, (7th Cir., No. 13541, withdrawn), which deals with a publication alone.

In looking to Illinois law, we cannot ignore two recent Cook County Circuit Court pronouncements. On June 27, 1962, Judge Henry W. Dieringer decided an almost identical suit brought by the same plaintiff against Allied Artists Pictures Corp. for appropriation of property rights in the presentation of a motion picture entitled "Al Capone." (No. 61 C 5936)

Judge Dieringer dismissed the action for failure to state a cause of action and said:

"In the case at bar, the plaintiff, by her attorney, attempts to circumvent the established law, as stated above, and asks this court to promulgate a new rule of law, namely that a property right exists in the estate of a deceased person as to his name, likeness, personality and history of his private life. * * *

" * * * The test of any rule is the extreme and it can readily be seen the pronouncement of a rule of law, as requested by counsel for the plaintiff, could lead to an absurd result."

More recently, on April 15, 1964, Judge Kluczynski sitting on the Circuit Court of Cook County decided the case of Nathan Leopold Jr. v. Meyer Levin (No. 59 C 14087). In an attempt to avoid a stricter statute of limitations, the plaintiff sought to convert a right of privacy action into one for appropriation of a property right, the same theory utilized in the instant case. Judge Kluczynski refused to accept this facade and treated the action as one for invasion of privacy, saying:

"The basis of this action is an alleged appropriation of the name, likeness and personality of the plaintiff, Nathan Leopold Jr., and a conversion of these elements of plaintiff's personality by the various defendants herein to their own use and for their own profit. This, it is alleged, was accomplished in the writing, publishing and distribution of a novel and play and a movie entitled 'Compulsion.' *Such an action is categorized* in the law *as an action for right of privacy.*" (Emphasis added)

While we are not bound by these lower court pronouncements, we cannot help but be influenced by the Judges' statements of Illinois law, which they are ably qualified to interpret. It is the opinion of this court that we must look through form to substance, and tear away the facade of labels erected by plaintiff. This is indeed an invasion of privacy action, and accordingly must be subject to the limitations inherent therein.

Al Capone died in January of 1947. The telecasts complained of were made more than ten years later. It would seem to be undisputed law that the right of privacy, the right of the individual to be left alone, is personal in

nature, and may not survive the death of the injured party.

Quoting from Prosser on Torts, 2d Edit., at p. 641:

"The cause of action does not survive the individual, and cannot exist after death."

█ Similarly, in Ravelette v. Smith (7th Cir., 1962) 300 F.2d 854 at p. 857, the court adopted the universally recognized rule that the right of privacy is a personal one and cannot survive death. Accordingly, the administratrix has failed to state a cause of action upon which relief can be granted.

█ 2) The court must next turn to the relational right of privacy asserted by the widow and son of the deceased. The question raised is clear: May the relatives of a deceased party claim invasion of their right of privacy by publications respecting the deceased, when they themselves were not publicized at all in the telecasts?

Plaintiffs rely upon the initial opinion handed down in Wagner v. Fawcett Publications, No. 13541 (7th Cir., June 18, 1962), as holding that such a relational right exists. That opinion was specifically withdrawn after a motion for rehearing (307 F.2d 409) and is of no weight as authority. However, even if the court were to regard it as precedent, plaintiff would not be aided. In addition to a holding that no cause of action was vested in the mother of deceased as administratrix of her daughter's estate, the court clearly stated that the magazine articles purported to account for the happenings of the deceased daughter *and the plaintiff*. In that case no mere relational right was claimed, as here, but rather the plaintiff, herself, had been publicized.

Plaintiff's reliance on the dead body cases is similarly on shaky grounds. In those cases a right to possession and preservation of the body of a deceased for burial purposes has been invaded. This is a right recognized by law. In re Estate of Fischer, 1 Ill.App.2d 528, 117 N.E.2d 855 (1954); Mensinger v. O'Hara, 189 Ill.App. 48 (1914). In the case at bar, no judicially recognized right has been invaded, and the courts of Illinois have been unwilling to apply the dead body rationale to invasion of privacy claims. See Bradley v. Cowles Mag. Co., 26 Ill.App.2d 331, 168 N.E.2d 64 (1960).

Turning next, where inevitably we must, to the pronouncements of the Illinois Courts, we find no support for plaintiff's cause. In Annerino v. Dell Pub. Co., 17 Ill.App.2d 205, 149 N.E.2d 761 (1958), the court upheld a suit for invasion of privacy brought by the widow of a city detective, whose exploits were published in a magazine article. However, the action was clearly personal and not relational, inasmuch as the plaintiff was mentioned three times in the article, and her picture was used in connection with the story. Recovery was apparently limited to the invasion of her personal *privacy*, alone.

· The case of Bradley v. Cowles Mag. Co., supra, decided two years later, is very much in point. In that case, the court dealing with a publication in Look Magazine relating to the death of young Emmett Till, clearly presented the issue:

"The legal question before us is, shall the right of privacy be extended to provide damages for the anguish of a mother, caused by a publication concerning the murder of her son, although she herself was not featured or substantially publicized." (26 Ill.App.2d at p. 333, 168 N.E.2d at p. 65)

Dismissing once again plaintiff's distinction between publication in Look Magazine and a television broadcast, this is the precise issue before the court today. The court, in Bradley, carefully reviewed the Eick and Annerino decisions, charting the course of invasion of privacy litigation in Illinois. In conclusion, Mr. Justice Schwartz relied upon Metter v. Los Angeles Examiner, 35 Cal. App.2d 304, 95 P.2d 491 (1939), using the following language:

"The court also held that a right of action for the invasion of the right

of privacy was purely personal, and that the plaintiff must prove invasion of his own right of privacy before he can recover." (26 Ill.App. 2d at p. 336, 168 N.E.2d at p. 66). See Kelly v. Jonson Publ. Co., 160 Cal.App.2d 718, 325 P.2d 659 (1958).

Similarly, Judge Miner, in Insull v. N. Y. World-Telegram Corp., (D.C.Ill., 1959) 172 F.Supp. 615, 636, affd. (7th Cir., 1959) 273 F.2d 166, held *inter alia*, that a son has no cause of action for an injury suffered by him predicated upon a libel of his dead father.

Despite plaintiff's protests as to how the Illinois courts should have decided Bradley, we cannot question the method adopted. The prime issue is clearly certified and the conclusion reached. This is the law of Illinois until altered, and this is the law we must apply.

The court however must agree with plaintiff that a wrong has been committed. And, indeed, there should be a remedy. The volume of pages contained in the briefs before us testify to the fact that this is an area of the law that has been unsatisfactorily developed, and there is much need for reform. We are much impressed with plaintiff's arguments relating to the distasteful type of profiteering that has followed the death of our late beloved President, John F. Kennedy, and the unfortunate lack of legal machinery available to curtail it. Yet, if the courts are to overcome the imperfections in the law, we must do it within the framework of our established legal system.

This court sits here today by virtue of our diversity jurisdiction, and we are bound to apply the substantive law formulated by the Illinois courts. It therefore follows that this is the improper forum for such agruments and for such reform. It is rather in the Appellate Courts of this state that the policy arguments before us must be made. We urge that these arguments be made. We urge the courts to reform the law. But until such arguments have been accepted we are bound to apply what has already been written.

Accordingly the motion of defendants to dismiss plaintiffs' third amended and supplemental complaint is granted.