THE BANK OF INDIANA, Plaintiff-Appellee, v. DONALD TREMUNDE et al., d/b/a Burr Oak Black Angus Farms, Defendants.—(SAM BROWN et al., Intervenors-Appellants.)

Fifth District   No. 76-320

Opinion filed July 8, 1977.

G. MORAN, J., dissenting.

Williamson & Williamson, of Vienna, for appellants.

Paul T. Austin, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This appeal arises out of a replevin suit brought in the Circuit Court of Johnson County by plaintiff-appellee, the Bank of Indiana, against Donald Tremunde and Glenn K. Brown, doing business as Burr Oak Black Angus Farms, a partnership. Tremunde and Glenn Brown are not parties to this appeal, and all issues arising out of alleged improprieties in the replevin proceedings have been settled. The only issue remaining for our consideration on this appeal is whether the trial court erred in granting the bank's motions for directed verdict on the counterclaims for

invasion of privacy of intervenors-appellants Sam Brown and Elizabeth Brown.

On October 27, 1975, the bank sought and obtained a writ of replevin to recover from the partnership certain farm machinery, cattle, and grain and feed in which the bank had a security interest. Some of the partnership property to be replevied was located on the Brown farm in Johnson County, near Belknap, where the partnership was engaged in raising beef cattle. This farm had been sold by Sam and Elizabeth Brown to their son Glenn and his wife JoAnn for $22,000 on September 8, 1973. There is no dispute as to the fact that no life estate was reserved in the names of Sam and Elizabeth Brown, who had no formal estate of any kind in the property. The younger Browns had, however, agreed orally that the parents could continue to live in the house located on the farm until their deaths.

After the writ had issued and been served upon Tremunde, Sheriff Faulkner of Johnson County went to the Brown farm to serve the writ upon Glenn Brown, at about 5:30 p.m. on October 27. The sheriff determined that Glenn Brown was not there, explained to Sam Brown what was going to happen, and left a copy of the writ of replevin with him. Shortly thereafter, a number of men in trucks arrived at the farm and began to load cattle and equipment pursuant to the writ. It took the men several hours to accomplish the loading operation, which was completed at about 10 p.m.

The complaints for invasion of privacy alleged in substance that the bank, through its agents, had unreasonably intruded upon intervenors' seclusion in the process of loading the cattle and equipment onto the trucks, during which the bank's agents "[s]houted obscenities and cursed and made loud noises after cover of darkness greatly disturbing the intervenor[s]"; that the activities alarmed them and caused them to be fearful for their safety; that they had not been made parties to the replevin action and had not been forewarned of the activities; that each of them had as a direct and proximate result of the actions of the bank's agents suffered invasions of privacy, and that Elizabeth Brown had become sick and required hospitalization for two weeks beginning on October 29, 1975.

At trial, Elizabeth Brown testified that she was 70 years old and was living on the farm with her husband on October 27, 1975. She said that about 5 or 5:30 p.m., the sheriff came to the door and informed them that he had a court order "to take the cattle and stuff." About half an hour later, just before dark, "a whole bunch" of trucks began to arrive. The men immediately "started trying to get the cattle up, load up the cattle, hollering and yelling at the cattle and trying to get the cattle up and

getting trucks placed and started getting ready to load the machinery." She said that she and her husband had no notice that this operation was going to take place. She testified that:

> " \* \* \* I didn't sleep that night worth anything and the next day and night I became sick at my stomach and started vomiting and kept on all the rest of the day and into the night. Wednesday morning I had to call the doctor \* \* \* and he put me in the hospital and I was in the hospital two weeks."

Since the night in question, she testified, "I've been awfully nervous and embarrassed and feeling ashamed being out to meet people about what had happened." She said that every time the incident comes up and anything is mentioned about it, it upsets her and makes her sick. On cross-examination, she testified that the only time she left the house that night was to go to the equipment shed to summon the sheriff to the telephone.

Sam Brown testified that he was 77 years old and had lived on the farm for 43 years. He said that the sheriff had told him about the court order, but not that the cattle and equipment were to be loaded that night. He testified that the men took certain property which belonged to him, not to the partnership. (The count of the counterclaim raising this issue was settled and dismissed with prejudice by stipulation of the parties and is not involved in this appeal.) He testified that he has a heart condition and that he took six heart pills that night because of pains in his chest, arms and throat.

At the close of all the evidence, the court granted the motions for directed verdict because of intervenors' total failure to prove causes of action for invasion of privacy.

The existence of a cause of action for violation of an individual's right of privacy was first recognized in this State in *Eick v. Perk Dog Food Co.*, 347 Ill. App. 293, 106 N.E.2d 742 (1st Dist. 1952). (See also *Annerino v. Dell Publishing Co.*, 17 Ill. App. 2d 205, 149 N.E.2d 761 (1st Dist. 1958); *Bradley v. Cowles Magazines, Inc.*, 26 Ill. App. 2d 331, 168 N.E.2d 64 (1st Dist. 1960); *Carlson v. Dell Publishing Co.*, 65 Ill. App. 2d 209, 213 N.E.2d 39 (1st Dist. 1965).) Our supreme court first considered the right of privacy in *Leopold v. Levin*, 45 Ill. 2d 434, 259 N.E.2d 250 (1970). The court noted in *Leopold* that there had been implicit legislative recognition of such a cause of action by the enactment in 1959 of a statute of limitations for suits complaining of violations of privacy. (See Ill. Rev. Stat. 1975, ch. 83, par. 14.) Although the court rejected Leopold's action on First Amendment grounds, it said:

> "We agree that there should be recognition of a right of privacy, a right many years ago described in a limited fashion by Judge Cooley with utter simplicity as the right 'to be let alone.' Privacy is one of the sensitive and necessary human values and undeniably

there are circumstances under which it should enjoy the protection of law." (45 Ill. 2d 434, 440-41, 259 N.E.2d 250, 254.) (On the constitutional, as opposed to the common-law, right of privacy, compare *Stein v. Howlett*, 52 Ill. 2d 570, 289 N.E.2d 409 (1972), with *Illinois State Employees Association v. Walker*, 57 Ill. 2d 512, 315 N.E.2d 9 (1974).)

Prosser, whose analysis has received wide acceptance (see *Midwest Glass Co. v. Stanford Development Co.*, 34 Ill. App. 3d 130, 339 N.E.2d 274 (1st Dist. 1975)), distinguished four forms of invasion of privacy: an unreasonable intrusion upon the seclusion of another; the appropriation for benefit of another's name or likeness; public disclosure of private facts; and placing another in a false light in the public eye. (Prosser, Torts §117 (4th ed. 1971); see also Prosser, *Privacy*, 48 Cal. L. Rev. 383 (1960).)

As to the form of the tort with which we are here concerned, intrusion, Prosser wrote:

> "It is clear * * * that there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad manners, harsh names, and insulting gestures in public, are not enough. It is clear also that the intrusion must be something which would be offensive or objectionable to a reasonable man, and that there is no tort when the landlord stops by on Sunday morning to ask for the rent. It is clear also that the thing into which there is intrusion or prying must be, and be entitled to be, private.* * *" Prosser, Torts §117 802, 808, footnotes omitted.

The Restatement (Second) of Torts, which follows closely Prosser's formulation, provides a definition in section 652B:

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

■■ Although we have found no reported Illinois cases recognizing a cause of action for unreasonable intrusion upon seclusion, we assume, on the basis of the *Leopold* case, that our supreme court would recognize such an action were appropriate facts alleged and proved. In this case, however, we must agree with the court below that intervenors totally failed to prove such a cause of action. There was, we think, nothing unreasonable about the actions of the bank's agents, taken under the authority of a lawful court order, in loading the replevied cattle and equipment onto the trucks. Of necessity this process was noisy, and no doubt it would have been somewhat annoying to a reasonable person situated as were the Browns. There was no proof, however, of anything

unreasonably intrusive about the procedure used, much less of anything which would have been highly offensive to a reasonable person. Nor was there any proof that Mrs. Brown's hospitalization was the foreseeably proximate result of the actions of the bank's agents.

■■ ■ It must be remembered that the right to privacy "is not a guaranty of hermitic seclusion." (*Bradley v. Cowles Magazines, Inc.*, 26 Ill. App. 2d 331, 333, 168 N.E.2d 64, 65 (1st Dist. 1960).) Nor is it an absolute right. (*Midwest Glass Co. v. Stanford Development Co.; Bloomfield v. Retail Credit Co.*, 14 Ill. App. 3d 158, 302 N.E.2d 88 (1st Dist. 1973).) We think that the court below properly directed verdicts against the intervenors on their counterclaims for invasion of privacy, as all the evidence, viewed in the aspect most favorable to intervenors, so overwhelmingly favored the bank that no contrary verdict based on the evidence presented could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967).

For the foregoing reasons, the judgment of the Circuit Court of Johnson County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
Sam Brown, age 77, and Elizabeth Brown, his wife, lived on the Brown farm for 43 years prior to the time of the filing of this suit. Some time before the proceeding in this case they put this farm in the name of their son, Glenn K. Brown, and his wife with the further agreement that they retain a life estate in this property. This fact was verified by both Donald Tremunde and Glenn K. Brown.

On October 27, 1975, the bank sought and obtained a writ of replevin to procure pledged assets of the partnership from the Brown farm. Sam and Elizabeth were in possession of the farm and the goods and chattels taken at the time the writ of replevin was served and executed. As such they were necessary parties to the replevin suit. However, they were not made parties. This, then, was a proceeding against them and their property without authority of law.

Replevin is a proceeding by which the owner or someone who has a right to possession in the chattels seeks to obtain possession of the chattels. It is primarily a possessory action. Persons having possession of the goods or chattels sought to be replevied must be made parties defendant as this suit is maintainable only against those in actual or constructive possession.

Since Sam Brown and his wife were in quiet and peaceful enjoyment of their premises at the time their property was unlawfully invaded by the

agent of the Bank of Indiana, they have a valid cause of action for the invasion of their privacy. They would also have a cause of action for trespass.

The summary seizure of the property in question was also unlawful because it was based on a false affidavit and a wrongful order of a trial judge.

Section 4 of the Replevin Act (Ill. Rev. Stat. 1975, ch. 119, par. 4) provides in part:

> "An action in replevin shall be commenced by the filing of a verified complaint which describes the property to be replevied and states that the plaintiff in such action is the owner of the property so described, or that he is then lawfully entitled to the possession thereof,* * *."

Section 4a of the Act provides:

> "The defendant shall be given 5 days written notice in the manner required by Rule of the Supreme Court, of a hearing before the Court to contest the issuance of a writ of replevin. No writ of replevin may issue nor may property be seized pursuant to a writ of replevin prior to such notice and hearing except as provided in Section 4b."

Section 4b of the Act provides:

> "Notice to the defendant is not required if the plaintiff establishes and the court finds as a matter of record and supported by evidence that summary seizure of the property is justified by reason of necessity to:
>
> * * *
>
> (c) protect the plaintiff from an immediately impending harm which will result from the perishable nature of the disputed property under the particular circumstances at the time of the action;* * *."

The plaintiff filed its verified complaint alleging:

> "8. That it is necessary to protect the plaintiff from immediately [sic] and pending harm which will result from the perishable nature of the property described herein that the plaintiff has an immediate hearing without notice to the defendants, pursuant to the provisions of Chapter 119, Section 4B(c)."

The property to be seized was described in the complaint as farm machinery and equipment, beef cattle and stored grain and feed. These goods were not perishable. In *Illinois Central R.R. Co. v. McClellan,* 54 Ill. 58, the court said at page 67:

> "Perishable property, in the commercial sense, is that which, from its nature, decays in a short space of time, without reference to the care it receives. Of that character, are many varieties of fruits,

flowers, some kinds of liquors, and numerous vegetable productions. But to say mature, merchantable corn was of that character, would be a perversion of language. This clause does not, therefore, govern the loss in this case."

Since the property seized was not perishable, the affidavit and complaint were not true, and resort to summary seizure was therefore illegal. The trial court had no jurisdiction to issue an order for a writ of replevin based on this affidavit and complaint; nor did the trial court hold a hearing as required by section 4b of the Replevin Act (Ill. Rev. Stat. 1975, ch. 119, par. 4b.) Able counsel in their brief say:

"Justice before the law is perhaps the highest principle of law and the greatest promise to men. Circumventing the law by verifying that farm machinery and cattle are perishable makes a mockery of the law and lays another millstone in the path of all who seek and believe in the convenant of equal justice under the law."

I agree.

The order of the trial court was illegal for another reason. Section 4c of the Act provides:

"At the hearing on the issuance of the writ of replevin, which may be a hearing to contest pursuant to notice under Section 4a or an ex parte hearing pursuant to a finding under Section 4b, the court shall review the basis of the plaintiff's claim to possession. If the plaintiff establishes a prima facie case to a superior right to possession of the disputed property, and if the plaintiff also demonstrates to the court the probability that he will ultimately prevail on the underlying claim to possession, the court shall so find as a matter of record and a writ of replevin shall issue on the order of the court."

Prior to issuance of the order of replevin, the trial court did not find of record that the plaintiff had met its burden of proving that it had a superior right to possession of the disputed property nor did the court find of record that the plaintiff had demonstrated to it that the plaintiff would ultimately prevail on the underlying claim to possession. Replevin is a statutory proceeding and must be strictly followed. *O'Toole v. Klimek Boat & Engine Works*, 24 Ill. App. 2d 111 (1960), 164 N.E.2d 253.

Elizabeth testified that she was 70 years old and lived on the Brown Farm. The trucks were there for three hours or more. "I walked the floor and cried. I worried about Sam. I was afraid he would have a heart attack. I didn't sleep that night worth anything and the next day and night I became sick at my stomach and started vomiting and kept on all the rest of the day and into the night. Wednesday morning I had to call the doctor. I went to the doctor and he put me in the hospital and I was there two

weeks." She testified, "I've been awfully nervous and embarrassed and feeling ashamed being out to meet people about what had happened. Every time it comes up and anything mentioned it upsets me and makes me sick."

Sam testified he had lived on the Brown farm for 43 years and that he was 78 years old. The property belonging to him was taken away that night. "I took six heart pills that night under my tongue. I took them because I was hurting in my heart and chest and up and down my arms and throat."

Sam and Elizabeth Brown have been wronged by the illegal action of the plaintiff in this case. They should have their remedy in our courts. Instead of affirming the trial court in this case, we should reverse and remand for a trial on damages alone.