Deborah Rozner BOND, Plaintiff,

v.

Cheryl Caliendo PECAUT, Defendant.

No. 82 C 7494.

United States District Court,
N.D. Illinois, E.D.

April 12, 1983.

Robert E. Burke, McHenry, Ill., for plaintiff.

Robert Marc Chemers, Pretzel & Stouffer, Chartered, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

In this action brought in federal court under 28 U.S.C. § 1332 (1976), plaintiff Deborah Rozner Bond seeks to recover damages caused by a letter written to Judge Jane D. Waller of the Circuit Court of Lake County, Illinois, by defendant Cheryl Caliendo Pecaut. Defendant has moved to dismiss the complaint. Since plaintiff has submitted materials outside the pleadings in opposition to the motion, we treat it as one for summary judgment. Fed.R.Civ.P. 12(b).

Plaintiff was divorced from Joseph Luciana ("Luciana") in 1978 and was awarded custody of their son. In 1982, plaintiff petitioned the Circuit Court of Lake County to permit her to move to Virginia with the child, where she planned to remarry. Luciana responded to the petition by requesting that he be awarded custody. The court, seeking guidance, ordered defendant, a psychologist, to conduct a "custody evaluation," which was submitted to the court on May 16, 1982. In her evaluation, defendant recommended that plaintiff be permitted to move to Virginia with her son, and stated her opinion that it would not be "psychologically detrimental" for the boy if he moved away from his father. On May 24, the court entered an order permitting plaintiff to move to Virginia with her son, relying in part on defendant's recommendations.

On November 10, 1982, Luciana presented the court with a motion to modify the earlier order, alleging that since its entry and plaintiff's move to Virginia, she had adopted a course of conduct designed to "alienate" the son from his father. Appended to the motion was a letter addressed to the court from defendant, in which she described plaintiff's attempts to prevent Luciana from seeing his son pursuant to a visitation plan which had been adopted in the earlier order. The letter indicated that this conduct would cause the child to "suffer emotionally," and that it was indicative of "a more severe emotional difficulty on [plaintiff's] part than was initially evident." The record does not reveal the disposition of Luciana's motion.

■ In count I of her complaint, plaintiff alleges that the letter is defamatory. Defendant claims she is entitled to judgment because the letter is privileged as a matter of law,[1] and hence is not actionable.

■ Illinois law[2] holds that all matters submitted to a court in judicial proceedings are absolutely privileged if relevant to the proceedings, and relevance is broadly construed to include all matters arguably relevant to the pending proceeding. *Libco Corp. v. Adams,* 100 Ill.App.3d 314, 316–17, 55 Ill.Dec. 805, 807, 426 N.E.2d 1130, 1132 (1982); *Anderson v. Matz,* 67 Ill.App.3d 175, 23 Ill.Dec. 852, 384 N.E.2d 759 (1978); *Wahler v. Schroeder,* 9 Ill.App.3d 505, 507, 292 N.E.2d 521, 523 (1972); *Macie v. Clark Equipment Co.,* 8 Ill.App.3d 613, 290 N.E.2d 912 (1972); *Sarelas v. Alexander,* 132 Ill. App.2d 380, 384, 270 N.E.2d 558, 560–61 (1971); *Talley v. Alton Box Board Co.,* 37 Ill.App.2d 137, 185 N.E.2d 349 (1962); *Harrell v. Summers,* 32 Ill.App.2d 358, 178 N.E.2d 133 (1961); *Dean v. Kirkland,* 301

---

**1.** Whether a defamatory statement is shielded by an absolute or qualified privilege is a question of law for the court. *See Brubaker v. Board of Educ.,* 502 F.2d 973, 991 (7th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *Spencer v. Community Hosp.,* 87 Ill.App.3d 214, 219, 42 Ill.Dec. 272, 277, 408 N.E.2d 981, 986 (1980); *Roemer v. Zurich Ins. Co.,* 25 Ill.App.3d 606, 612–13, 323 N.E.2d 582, 587 (1975); *Ashe v. Hatfield,* 13 Ill.App.3d 214, 218, 300 N.E.2d 545, 548 (1973);

*Myers v. Spohnholtz,* 11 Ill.App.3d 560, 565, 567, 297 N.E.2d 183, 188 (1973); *Soter v. Christoforacos,* 53 Ill.App.2d 133, 202 N.E.2d 846 (1964); *Judge v. Rockford Mem. Hosp.,* 17 Ill. App.2d 365, 379, 150 N.E.2d 202, 207 (1958); *Chaloupka v. Lacina,* 301 Ill.App. 172, 178, 21 N.E.2d 909, 912 (1939).

**2.** The parties agree that this case is governed by Illinois law.

Ill.App. 495, 509–10, 23 N.E.2d 180, 187–88 (1939).[3] The breadth of this privilege is illustrated by the facts that it has been extended to quasi-judicial proceedings, *see Brubaker v. Board of Education,* 502 F.2d 973, 990–91 (7th Cir.1974) (board of education), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 109 (N.D.Ill.1980) (arbitration); *McCutcheon v. Moran,* 99 Ill.App.3d 421, 54 Ill. Dec. 913, 425 N.E.2d 1130 (1981) (board of education); *Parker v. Kirkland,* 298 Ill.App. 340, 18 N.E.2d 709 (1939) (board of tax appeals); *Kimball v. Ryan,* 283 Ill.App. 456 (1936) (board of education);[4] and not only to statements made in court, but also to any statement made in preparation for or in relation to a pending proceeding, *see Libco Corp. v. Adams,* 100 Ill.App.3d 314, 55 Ill. Dec. 805, 426 N.E.2d 1130 (1981); *McCutcheon v. Moran,* 99 Ill.App.3d 421, 425, 54 Ill.Dec. 913, 916, 425 N.E.2d 1130, 1133 (1981); *Weiler v. Stern,* 67 Ill.App.3d 179, 23 Ill.Dec. 855, 384 N.E.2d 762 (1978); *Dean v. Kirkland,* 301 Ill.App. 495, 510, 23 N.E.2d 180, 188 (1939).

Two cases are particularly pertinent. In *Nolin v. Nolin,* 68 Ill.App.3d 54, 215 N.E.2d 21 (1966), the court held that defamatory statements in a will are absolutely privileged, so as not to deter executors from presenting unaltered wills for probate. In *Krumin v. Bruknes,* 255 Ill.App. 503 (1930), the defendant, who had sided with his sister in her divorce action against the plaintiff, gave an affidavit to the Naturalization Bureau charging the plaintiff, an alien, with being a criminal. The court held the affidavit was absolutely privileged, so as not to deter citizens from presenting information to law enforcement authorities.

■ These principles indicate that defendant's letter to the court was absolutely privileged. The letter was relevant to pending legal proceedings.[5] In it, charges are made that plaintiff had disobeyed an order of court. Moreover, the court had a legitimate interest in how its custody order was being carried out. Plaintiff argues that since the court had not requested the letter, it was not privileged. However, there is no authority for the proposition that the court must request a communication before it is privileged. In any event, having learned that some of the information contained in her earlier report was erroneous, defendant was certainly under an ethical, if not a legal obligation to report that fact to the court, so it would be apprised of the facts. In the final analysis, we think that public policy is served if persons with knowledge of relevant facts can report to the courts without fear of civil liability. That is the policy underlying the privilege, as the *Nolin* and *Krumin* cases make clear. That policy can only be vindicated if defendant's letter is accorded an absolute privilege.

■ Even if the letter were not entitled to an absolute privilege, defendant would still be entitled to judgment on the issue of qualified privilege. In *Judge v. Rockford Memorial Hospital,* 17 Ill.App.2d 365, 150 N.E.2d 202 (1958), the court stated that there are five elements of a qualified privilege: 1) good faith by the writer, 2) an interest or duty to uphold, 3) a statement limited in scope to that purpose, 4) a proper occasion, and 5) publication in a proper manner and to proper parties only. *Id.* at

3. *See generally McDavitt v. Boyer,* 169 Ill. 475, 48 N.E. 317 (1897); *Ash v. Zwietusch,* 159 Ill. 455, 42 N.E. 854 (1896); *Strauss v. Meyer,* 48 Ill. 385 (1968).

4. *See generally Richardson v. Dunbar,* 95 Ill. App.3d 254, 257, 50 Ill.Dec. 756, 759, 419 N.E.2d 1205, 1208 (1981).

5. In his motion, Luciana contended that the court still had jurisdiction over plaintiff because she was still litigating certain matters in

the court at the time the motion was filed, meaning she had submitted herself to the jurisdiction of the Illinois courts even though she had moved to Virginia. Plaintiff does not contend the circuit court was without jurisdiction. In any event, the court need not have had jurisdiction for the letter to be privileged. As long as there is a colorable claim of jurisdiction, the letter is privileged. *See Wahler v. Schroeder,* 9 Ill.App.3d 505, 507, 292 N.E.2d 521, 523 (1972).

376–77, 150 N.E.2d at 207.[6] There is no serious dispute that defendant's letter satisfied requirements 2) through 5). Defendant had an interest in ensuring that the court was not misled by her previous report, the letter was limited to reporting the new facts not contained in the report that were relevant to the child's welfare and the court's order, Luciana's motion provided a proper occasion for the letter since the child's custody and contact with his father was put at issue by the motion, and the letter was published only to the court and parties.

With regard to the first element, the complaint does not even allege that the letter was written in bad faith. Even if it did contain such allegation, unless it is supported by specific facts, it would be insufficient to withstand summary judgment. *See Spencer v. Community Hospital,* 87 Ill. App.3d 214, 220, 42 Ill.Dec. 272, 278, 408 N.E.2d 981, 987 (1980); *Roemer v. Zurich Insurance Co.,* 25 Ill.App.3d 606, 613, 323 N.E.2d 582, 587 (1975); *Sarelas v. Law Bulletin Publishing Co.,* 115 Ill.App.2d 205, 219–20, 253 N.E.2d 168, 174–75 (1969). The only evidence the parties have adduced consists of defendant's report and letter, the court's order, and Luciana's motion. None

of that evidence in any way suggests bad faith on defendant's part. To the contrary, the report and following letter merely contain legitimate expressions of concern for the welfare of plaintiff's child. No inference of malice is raised where a statement merely reflects a legitimate concern of the defendant.[7] To the contrary, the record affirmatively demonstrates defendant's good faith, given "the dispassionate and purposeful tone of [he]r letter," *Allen v. Ali,* 105 Ill.App.3d 887, 892, 61 Ill.Dec. 678, 681, 435 N.E.2d 167, 170 (1982).

■ In count II, plaintiff seeks to recover by alleging that the letter constitutes a tortious invasion of her privacy. Defendant contends that Illinois recognizes an action for invasion of privacy only when an unauthorized appropriation of the plaintiff's name for commercial purposes is alleged. Otherwise, there is no action in Illinois for invasion of privacy, defendant argues. While there is some authority for this view, *see Kelly v. Franco,* 72 Ill.App.3d 642, 646, 28 Ill.Dec. 855, 858–59, 391 N.E.2d 54, 57–58 (1979); *Bureau of Credit Control v. Scott,* 36 Ill.App.3d 1006, 1009, 345 N.E.2d 37, 40 (1976),[8] we need not go so far as to hold

**6.** *Accord, Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345, 243 N.E.2d 217 (1968); *Allen v. Ali,* 105 Ill.App.3d 887, 891, 61 Ill.Dec. 678, 681, 435 N.E.2d 167, 170 (1982); *Spencer v. Community Hosp.,* 87 Ill.App.3d 214, 219, 42 Ill.Dec. 272, 277, 408 N.E.2d 981, 986 (1980); *Welch v. Chicago Tribune Co.,* 34 Ill.App.3d 1046, 1051, 340 N.E.2d 539, 543 (1976); *Roemer v. Zurich Ins. Co.,* 25 Ill.App.3d 606, 613, 323 N.E.2d 582, 587 (1975); *Ashe v. Hatfield,* 13 Ill.App.3d 214, 217, 300 N.E.2d 545, 547 (1973); *Myers v. Spohnholtz,* 11 Ill.App.3d 560, 567, 297 N.E.2d 183, 188 (1973).

**7.** *See, e.g., Gasbarro v. Lever Bros. Co.,* 490 F.2d 424 (7th Cir.1973) (personnel manager told employees that doctor overcharged them); *Allen v. Ali,* 105 Ill.App.3d 887, 61 Ill.Dec. 678, 435 N.E.2d 167 (1982) (letter to bar association concerning lawyer's professional ethics); *Spencer v. Community Hosp.,* 87 Ill.App.3d 214, 218–21, 42 Ill.Dec. 272, 276–78, 408 N.E.2d 981, 985–87 (1980) (doctor's report on plaintiff's qualification for hospital staff privileges); *Roemer v. Zurich Ins. Co.,* 25 Ill.App.3d 606, 612–14, 323 N.E.2d 582, 587–88 (1975) (former employer's response to request for information about plaintiff's job performance); *Ashe v.*

*Hatfield,* 13 Ill.App.3d 214, 300 N.E.2d 545 (1973) (letter from supervisor criticizing employee's job performance); *Myers v. Spohnholtz,* 11 Ill.App.3d 560, 297 N.E.2d 183 (1973) (union official's letter recommending application for union membership be denied); *Kamberos v. Schuster,* 132 Ill.App.2d 392, 270 N.E.2d 182 (1971) (memo from attorney's supervisor criticizing her performance); *Flannery v. Allyn,* 47 Ill.App.2d 308, 198 N.E.2d 563 (1964) (letter from citizen to police chief informing him that certain officers had solicited bribes); *Judge v. Rockford Mem. Hosp.,* 17 Ill.App.2d 365, 150 N.E.2d 202 (1958) (director of nurses requested plaintiff not be assigned to her hospital because losses of narcotics had occurred while plaintiff had worked there in the past); *Schlaf v. State Farm Mut. Automobile Ins. Co.,* 15 Ill.App.2d 194, 145 N.E.2d 791 (1957) (adverse information given to bonding company by plaintiff's former employer); *Wuttke v. Ladanyi,* 226 Ill. App. 402 (1922) (adverse recommendation by plaintiff's former employer).

**8.** However, these authorities are not quite as unambiguous as defendant suggests. *Kelly* contains only an alternative holding, and *Scott*

that Illinois would not recognize such a tort. Even if Illinois did permit recovery for publication of private facts about the plaintiff, the tort would be limited only to *unreasonable* intrusions on plaintiff's privacy. *See Challen v. Town and Country Charge,* 545 F.Supp. 1014, 1016–17 (N.D.Ill.1982); *Geisberger v. Willuhn,* 72 Ill.App.3d 435, 438–39, 28 Ill.Dec. 586, 589, 390 N.E.2d 945, 948 (1979); *Bank of Indiana v. Tremunde,* 50 Ill.App.3d 480, 8 Ill.Dec. 57, 365 N.E.2d 295 (1977); *Midwest Glass Co. v. Stanford Development Co.,* 34 Ill.App.3d 130, 339 N.E.2d 274 (1975). For the same reasons that we held defendant's letter privileged, we think that the record indicates that the letter was at most a reasonable intrusion on plaintiff's privacy. The letter is relevant to judicial proceedings in which plaintiff's fitness as a mother was at issue, so the court had a compelling need for access to the letter. The letter does not recite plaintiff's revelations in the course of therapy, but only what she had willingly told defendant in a phone conversation. Moreover, to serve the public policy in favor of permitting persons to communicate freely with courts, defendant can interpose the same privilege defense to an action for invasion of privacy as is available in a defamation action. *See Bloomfield v. Retail Credit Co.,* 14 Ill. App.3d 158, 173–74, 302 N.E.2d 88, 100 (1973). Hence defendant's privilege defense operates as a complete defense to count II as well as count I.

█ Plaintiff has also requested leave of court to file additional counts alleging breach of an implied contract, and unlawful disclosure of facts in violation of the Mental Health and Developmental Disabilities Confidentiality Act, Ill.Rev.Stat. ch. 91½, §§ 801–17 (1981). Defendant's privilege defense also acts as a complete defense to these claims. The implied contract between the parties and the guarantee of confidentiality of the act should not be read to undermine the public policies that justify the privilege defense. Assuming the courts of Illinois would recognize these causes of action, we think they would also recognize a privilege defense against them based on the same elements as the privilege in defamation actions.

Even if defendant did not have a privilege defense applicable to these two theories, we think they fail to state a cause of action. The two theories are in essence identical: the implied contract between the parties that guarantees confidentiality is coextensive with the guarantee of confidentiality the Illinois General Assembly has been willing to recognize. Indeed, there is no reason to believe an "implied" contract would be any broader than that level of confidentiality the legislature has concluded is reasonable. *See Geinsenberger v. Willuhn,* 72 Ill.App.3d 435, 438–39, 28 Ill.Dec. 586, 589, 390 N.E.2d 945, 948 (1979). The record does not reveal a breach of this legislative guarantee. The act creates a privilege against disclosure of a patient's "communication" to a therapist. Ill.Rev. Stat. ch. 91½, § 810 (1981). " '[C]ommunication' means any communication made . . . to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disabilities services to a recipient." *Id.* § 802(1). " 'Mental health or developmental disabilities services' or 'services' includes but is not limited to examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation." *Id.* § 802(3). It is debatable whether what plaintiff told defendant is covered by the act, since both parties understood that defendant's function was not to treat

held, over a dissent, that where plaintiff already has a remedy for intentional infliction of severe emotional distress, there was no need to also grant her a remedy for invasion of privacy. Moreover, in the Illinois Supreme Court's leading discussion of this area, it did not state that this tort was limited to commercial misappropriation. It recognized that privacy interests of individuals are entitled to protection in tort, but

held that on the facts of that case, which involved the plaintiff's participation in a sensational murder, the facts that had been published were not private and hence no invasion of a protected interest had been alleged. *See Leopold v. Levin,* 45 Ill.2d 434, 259 N.E.2d 250 (1970). *Leopold* implies that if a plaintiff does allege publication of truly "private" facts, he or she has a cause of action.

plaintiff, but to advise the court. In any event, the act permits disclosure of "communications" where the patient's mental condition is an element of a claim or defense after in camera inspection by the court. *Id.* § 810(a)(1)–(2). That is exactly what happened here. Plaintiff's fitness as a mother was certainly at issue in the custody proceedings, and the letter was submitted first to the court, which had an opportunity to inspect it before it was publicly filed. In fact, the record does not reveal whether the court ever did order the letter filed. If not, it remained in the court's private files and has never been disclosed within the meaning of the act. If so, the court had an opportunity to inspect the letter before it was filed, and the act was complied with. In either case, no violation of the act has been alleged.

Plaintiff's motion for leave to file additional counts is denied.

Defendant's motion to dismiss the complaint is granted. Judgment to enter in favor of defendant, with costs.